INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL 536 v. GENERAL ICE CREAM CORPORATION

SUPERIOR COURT        HARTFORD COUNTY        FILE NO. 82192-A

Memorandum filed July 22, 1948.

*Gordon & Cheney,* of Hartford, for the Plaintiff.

*Shipman & Goodwin,* of Hartford, for the Defendant.

MELLITZ, J.   This application is brought pursuant to the provisions of § 5842 of the General Statutes which provide that a party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application for an order directing the parties to proceed with the arbitration in compliance with their agreement.

On June 12, 1947, the plaintiff entered into two written agreements with the defendant, each of which contained the following provisions:

"1. This agreement shall become effective as of February 1, 1947, and shall be for one year from that date.  Neither party shall have the right to re-open or change any provisions of this

agreement prior to February 1, 1948. At its expiration, this agreement shall be automatically renewed subject to the following provisions:

"(a) Either party may terminate the agreement by giving written notice to the other on or before January 1, 1948. Failure to give such notice shall indicate the desire of the parties that this agreement shall be renewed at the date of expiration.

"2. Either party wishing to change any provisions of this agreement at renewal shall submit the proposed changes on or before midnight, January 1, 1948. If either party fails to submit such proposals, the party shall be deemed to have submitted the present agreement as its proposal.

"3. If the parties hereto, in negotiating a renewal of this agreement fail to agree on the hours and/or rates of pay before the expiration date of the agreement, any subsequent agreement reached shall be retroactive to the date following the date of expiration of the agreement. This shall include, but not be limited to, a decision in arbitration.

"4. Any differences, grievances, or dispute arising between the parties hereto, relating to this agreement, which cannot be adjusted by the representatives of the Union and the Employer, shall be submitted to the State Board of Arbitration, whose decision shall be final and binding on both parties. No strike or lockout shall take place during the term of this contract except against a party failing to comply with the decision of the Arbitration Board."

On November 28, 1947 the defendant wrote the plaintiff:

". . . we hereby notify you of provisions in our present agreement which are unsatisfactory and which we do not wish to continue beyond the expiration date of the present agreement.

"To correct these unsatisfactory provisions and to provide a more satisfactory agreement we propose the following changes and/or modifications.

\* \* \* \* \*

"Inasmuch as this notice is going forward to you in accordance with the provisions of the Taft-Hartley Act, it is our desire to enter into negotiations as soon as possible, with the thought that if agreement can be reached upon the provisions of a new contract, this should be done by Feb. 1, 1948.

"If no agreement can be reached by that date, we shall con-sider that our present contract is terminated as of January 31, 1948.

"If an agreement is reached subsequent to February 1, 1948, such agreement shall be effective upon the date of agreement."

On December 26, 1947 the plaintiff wrote the defendant:

"Pursuant to paragraph 2 on the first page of the agreement . . . we hereby give you written notice that we desire certain revisions to be effective February 1, 1948, the anniversary date of the agreement, . . . The changes requested are as follows:"

Nineteen changes to the agreement were proposed in the de-fendant's letter and seventeen changes were proposed by the plaintiff.

Following this exchange of letters a number of conferences took place between the parties up to and including January 31, 1948, when, the differences not having been resolved, it was understood that the plaintiff would instruct its members to con-tinue working at the same wage scale as before, and the defend-ant would continue to collect initiation fees from new employees and check off union dues as theretofore. On March 1, 1948, the defendant wrote the plaintiff:

"Because of the failure to reach an agreement, we do not consider ourselves bound by the previous contract which ex-pired on January 31, 1948 . . . In the future union dues, initia-tion fees, etc., will not be deducted by the company from em-ployees' earings."

On April 7, 1948, the plaintiff submitted the dispute to the Connecticut state board of mediation and arbitration, requesting the board to abitrate the questions arising from the suggested changes in the agreement proposed by each of the parties, and further the reinstatement of employees dismissed after March 1. 1948. The defendant has refused to proceed with the arbitra-tion on the ground that the agreements of June 12, 1947, were terminated on February 1, 1948, and that there is presently no agreement to arbitrate, and further that the questions submitted are not "relating to" the agreements within § 4 thereof or "aris-ing out of" the agreements within the meaning of the statute.

The authority of the court to enter the order sought is de-pendent upon a finding that there is in existence between the

parties a written agreement for arbitration. The plaintiff's position is that the agreements of June 12, 1947, were automatically renewed on February 1, 1948. The defendant contends that the agreements were terminated as of January 31, 1948, by the notice contained in its letters of November 28, 1947.

The agreements of June 12, 1947, are to be viewed as of the time they were entered into. They provided by their terms for automatic renewal on February 1, 1948, unless one of the parties gave written notice to the other on or before January 1, 1948, of an intention to terminate. This meant clearly that if either party did not choose to be bound by the agreement for a further term after February 1, 1948, the other was entitled to receive an unequivocal notice to that effect at least one month prior to the expiration date of the original term. Upon receipt of such a notice, the agreements contemplated that the party receiving it would be thereby afforded an opportunity to take such steps as its interests dictated in the light of the expiration of the agreement on February 1, 1948. No particular form of notice was required so long as it conformed to the requirement of the agreements and gave the other party, before January 1, 1948, unequivocal notice that the agreements of June 12, 1947 would terminate and no longer be in effect on and after February 1, 1948. The onus of a proper notice was placed upon the party desiring to bring the agreements to an end. *Holmes Electric Protective Co.* v. *Goldstein,* 147 Pa. Super. 506, 24 A. 2d 161.

The notice contained in the defendant's letter of November 28, 1947 was to the effect that if the discussions between the parties as to proposed changes were not concluded satisfactorily by January 31, 1948, the defendant would consider the agreements terminated as of that date. This meant that until January 31, 1948, the plaintiff could not know whether or not the agreements were renewed and were to continue in effect for another year beginning February 1, 1948. The plaintiff could not know from the notice of November 28, 1947, as it was entitled to know, at least one month before February 1, 1948, that it would have no agreement after that date with the defendant. By reserving to itself the right to treat the agreements terminated on January 31, 1948, if the discussions as to changes were not then satisfactorily concluded, the defendant rendered nugatory the provision that the plaintiff was entitled to notice of termination at least one month before that date.

The agreements envisioned either (1) termination on January 31, 1948, upon proper notice, or (2) automatic renewal. In the event of renewal, each party was privileged to submit proposals for changes on or before January 1, 1948, and it was expressly provided that negotiations relating to proposed changes could continue after February 1, 1948. Any agreement subsequently arrived at concerning such changes, whether by negotiations or arbitration, was to be retroactive to February 1, 1948. In other words, the agreements contemplated that they might be automatically renewed on February 1, 1948, but that proposed changes, seasonably submitted by either party, might require negotiations, and perhaps arbitration, which could not be concluded before that date. The automatic renewal of the agreements was not made dependent upon the conclusion before February 1, 1948, of negotiations concerning changes, or arbitration of the proposed changes.

The defendant's letter of November 28, 1947, proposing changes and modifications in the agreements, was clearly in contemplation of a renewal of the agreements in accordance with the provisions relating to automatic renewal and authorizing either party to submit proposed changes on or before January 1, 1948. The statement in the letter that agreement on the proposed changes must be reached before February 1, 1948, may be regarded only as a unilateral attempt to shorten up the period allowed in the agreements for negotiations of changes. In specifying that such negotiations could not run beyond January 31, 1948, the letter in effect sought to introduce a substitute for the provision in the agreements which placed no limitation upon the time for the conclusion of such negotiations. The further statement that proposed changes agreed upon subsequent to February 1, 1948 would not be retroactive was also a unilateral attempt to introduce a substitute for the provision in the original agreements.

The agreements upon which there was a meeting of the minds of the parties on June 12, 1947, provided for automatic renewal unless terminated by proper notice, and in the event of a renewal, negotiations for changes, without restrictions as to time, and neither party, by unilateral action, was privileged to alter or modify the provisions to suit its own purposes. Indeed, paragraph 1 of the agreements expressly provides: "Neither party shall have the right to re-open or change any provisions of this agreement prior to Feb. 1, 1948."

It is concluded that no notice to terminate the agreements, in accordance with the provisions of § 1 (a) of the agreements, was given by the defendant, and that the agreements were automatically renewed on February 1, 1948.

Section 4 of the agreements provides for arbitration of differences arising between the parties, relating to the agreements.

The questions sought to be arbitrated involve differences which have arisen between the parties, within the meaning of the agreements, and it is, therefore, ordered that the defendant proceed with arbitration before the Connecticut State Board of Mediation and Arbitration and arbitrate before said board, with respect to each of the agreements, dated June 12, 1947, between the plaintiff and the defendant, the following questions:

1. The requested revisions of the agreement, to be effective February 1, 1948, as contained in the union's letter to the company dated December 26, 1947.

2. The requested revisions of the agreement, to be effective February 1, 1948, as contained in the company's letter to the union dated November 28, 1947.

3. The reinstatement of all the company's employees who were on the payroll as of March 1, 1948.