MANUEL P. ALMADA ET AL. *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 90718

90

Memorandum filed July 11, 1952.

*Gordon, Muir & Fitzgerald,* of Hartford, for the Plaintiffs.

*Shipman & Goodwin,* of Hartford, for the Defendants.

BORDON, J. Beginning in March, 1948, the claimants (appellees) filed claims for unemployment benefits. In initial decisions by examiners of the unemployment compensation department, the claims were denied for the asserted reason that the unemployment was due to the existence of a labor dispute. Thereupon the claimants appealed to the unemployment compensation commission, first congressional district, and the commission, after hearings held in April and May of 1949, reversed the examiners' decisions and held the claimants eligible for benefits. The commission found that the claimants' unemployment was due to the existence of a labor dispute, but that such labor dispute was a lockout within the meaning of § 7508 (3) of the General Statutes; it held specifically that the employer's repudiation, on March 1, 1948, of contracts in effect between the employer and the union to which the claimants belonged deprived the employees of the protection of such contracts, an advantage they already possessed.

The employer appealed to the Superior Court, which affirmed the commission's decision, holding that the finding of lockout was warranted. *Almada v. Administrator*, 16 Conn. Sup. 491. The employer appealed to the Supreme Court, which ruled that for a lockout to exist it was not necessary that there be an actual closing of the doors by the employer; the Supreme Court, however, returned the case to the commission for a further finding of fact on a single issue: Were the conditions imposed upon the employees such that they could not be expected to work under them and had no reasonable alternative but to withhold their services? *Almada v. Administrator*, 137 Conn. 380.

At a second hearing held in February and March, 1951, the commission determined to take evidence anew on all issues rather than to limit the evidence to the question presented by the Supreme Court's decision. It then made a complete finding, again holding that the unemployment of the claimants was due to lockout; it found, in addition, in the language of the Supreme Court on the matter, that the employees could not reasonably be expected to work under the conditions imposed upon them, that they had no reasonable alternative but to leave their employment, and that they were thus entitled to benefits.

The commission made a further finding that, from March 5, 1948, the labor dispute, whether or not it was a lockout, was no longer the proximate cause of the unemployment. Hence, it held the claimants eligible for benefits for this additional reason.

The employer appealed to this court on both holdings, and the administrator entered an appearance, but only with respect to the alternate ground of eligibility. The administrator does not contest eligibility on the grounds of lockout.

Both employer and claimants filed motions to correct the findings; the motions were granted in part and denied in part, were the subject of additional reasons of appeal by the employer and were the basis in part of the claimants' answer to the reasons of appeal.

The court has performed the laborious task of reading all the evidence and briefs of counsel. In view of previous decisions of this court (16 Conn. Sup. 491) and of the Supreme Court (137 Conn. 380), it seems unnecessary to go into elaborate details already fully covered in those decisions. The decisive facts are contained in the commission's findings. Motions to correct filed by both sides were denied or granted as to the commission seemed proper. It appears to the court that the finding, as corrected, is amply supported by the evidence. There are many instances of contradictory testimony adduced by the parties, but it is for the commission to determine the facts from all the evidence, and its conclusions cannot be disturbed by the court if they are supported by evidence. The employer's complaint that the finding does not accord with the evidence cannot be well taken so long as there is some evidential support for it. Nothing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and the weight to be accorded their testimony. *Morgan* v. *Keefe,* 135 Conn. 254; *Neville* v. *Yaknunas,* 132 Conn. 627, 630. "The courts are bound by the findings of subordinate facts and the reasonable conclusions of fact made by such an administrative tribunal as the unemployment commissioners." *Almada* v. *Administrator,* 137 Conn. 380, 391; *Conte* v. *Egan,* 135 Conn. 367, 372; *Lanyon* v. *Administrator,* 139 Conn 20, 28.

It seems important to determine, first of all, whether the parties were bound by their contract of June 12, 1947, which became effective as of February

1, 1947. If the employer's letters of November 28, 1947, and the union's letter of December 26, 1947, did not terminate the contract as of January 31, 1948, then both parties were bound by its provisions when their controversies began in February 1948, and bargaining and/or arbitration should have proceeded pursuant to such provisions in the contract. Paragraph 8 of the finding finds that neither the union nor the employer had given each other unequivocal notice of an intention to terminate the contract, as required by paragraph (1) (a) of the agreements of February 1, 1947, and that the agreements were, therefore, automatically renewed as of February 1, 1948. The same conclusion was reached by Judge Mellitz in *International Brotherhood* v. *General Ice Cream Corporation,* 15 Conn. Sup. 480. It must therefore be considered as an established fact that both parties were bound by their contract and should have acted accordingly. The employees continued to work as before during negotiations, but the employer undertook a series of ineffective unilateral acts which attempted to vary the terms of the contract then controlling the rights of the parties, and its conduct spelled out a repudiation of an existing contract. Such repudiation deprived the employees of valuable rights which they had achieved through their union and which had been incorporated in the contract. What rights they had been deprived of are well listed and stated in paragraph 27 of the finding, which is made a part hereof. Perhaps the most humiliating and insulting act of the employer was the importation of so-called observers, but who, in reality, were strike breakers, and requiring the employees to teach them the routes and business routine of their work. The imposition of this requirement on the employees certainly was contrary to all rules of common decency and in conflict with human dignity and, therefore, intolerable. To accord judicial sanction to such conduct would destroy

modern humane progressive and constructive progress in management-labor relations which ought to be preserved at all costs.

Although the controversies between the parties started out as a labor dispute which would ordinarily disqualify the employees from benefits of unemployment compensation under § 7508 (3), the actions of the employer imposed such new and onerous conditions of employment that no self-respecting employee could reasonably have been expected to acquiesce in. The obvious purpose of these acts was to coerce the employees into an abandonment of their contract and to accept working conditions and employment terms much less favorable than had prevailed under their contract. Such acts constituted an effort by the employer to deprive the employees of advantages then currently in effect. The labor dispute, therefore, became a lockout within the meaning of § 7508 (3) (b) of the General Statutes, and pursuant thereto the employees were not disqualified from unemployment compensation benefits.

A lockout has been defined as a cessation of the furnishing of work to employees or the withholding of work from them in an effort to get for the employer more advantageous terms. *Almada* v. *Administrator,* 137 Conn. 380, 388, and cases therein cited. "This definition of a lockout contains two elements: first, that the employer withhold work from his employees, and, second, that he do so in an effort to force his employees to accept terms more favorable to him." It may be effected by imposing terms on continued employment that employees could not reasonably be expected to accept. *Almada* v. *Administrator,* supra, 389.

The facts found by the commission, on ample evidence, constitute a lockout. It found that "the threat of supplanting the men in their jobs by the importation of outside employees and the repudiation of the

contract in the notice of March 1, imposed such a change in working conditions that the employees, in reason, could not be expected to accept them and had no alternative but to stop work." It found further "that the terms of employment imposed by the Company were such that the employees had no reasonable alternative but to quit work." Under all the circumstances it was reasonable for the employees to do so. The demand of the employer that the employees take imported employees on the routes with them was an unreasonable and intolerable demand and was a reasonable cause for work stoppage. The hiring of permanent employees to take their place, through a repudiation of their contract, deprived the employees of job security provided for therein and constituted reasonable ground for stopping of work.

The employees could not, in reason, expect any benefits from reliance upon the protection of their contract. Actually, the employees never did stop work and never did renounce or repudiate their contract. When the employer repudiated its contract on March 1, it began a series of acts which called for peremptory action by the employees as a matter of self-defense and self-respect. Had they resorted to remedies under the contract, the lapse of time would have extinguished their union and their jobs. Surely such a course was impracticable.

The commission found in paragraphs 28AA, 28BB, 28CC, 28DD, 29, 29AA, based on evidence adduced at the hearings, that the employer's refusal to take the men back was for the purpose of coercing them to accept different terms of employment. This must necessarily be so because from March 5 on they offered to return to work unconditionally. The employer not only refused to take the men back but refused to arbitrate any of the terms of the contract, including their right to reinstatement, and such re-

fusal continued until it was ordered by the Superior Court to arbitrate, and thereafter, pending appeal of the Superior Court decision, until the entire dispute was settled in November, 1948. This was a deprivation of rights and benefits they enjoyed under their contract and was done for the purpose of coercing them to accept different terms of employment. Such was the real purpose and constituted a lockout.

The commission was warranted upon the facts found in concluding that the employer's conduct amounted to a lockout on March 2, 1948, within the meaning of the statute, and that the lockout did not "result from demands of the employees, as distinguished from an effort on the part of the employer to deprive employees of some advantage they already possess."

Judgment may enter dismissing the appeal.

In view of this decision, the court deems it unnecessary to pass upon the commission's ruling that after March 5 the employees became entitled to unemployment compensation because of lack of work. The lockout which began on March 2 was still in existence on March 5 and thereafter.