ANGELO CONTE ET AL. *v.* JOHN J. EGAN, ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

368

Argued December 10, 1948—decided February 21, 1949

*James F. Rosen,* with whom was *Gerald W. Brown-stein,* for the appellants (plaintiffs).

*Allan Seserman,* of the Massachusetts bar, with whom were *John I. Ely* and, on the brief, *Frederick H. Wiggin,* for Olin Industries, Inc.

*Harry Silverstone,* assistant attorney general, for the appellee (defendant).

JENNINGS, J. The examiner determined and the unemployment compensation commissioners and the Superior Court confirmed that the plaintiffs were unemployed because of a labor dispute in the factory where they were employed, that they did not come

within the statutory exceptions and that they were therefore ineligible for unemployment compensation benefits from September 21, 1946, to October 20, 1946. The finding supports the conclusion, and in order to prevail on their appeal the plaintiffs must succeed in their attempt to have the finding corrected in accordance with their motion filed to that end. The finding contains thirty paragraphs. The plaintiffs seek to have fourteen of those paragraphs eliminated as found without evidence and to have six of the remaining paragraphs amended. Such a wholesale attack on a finding made by three experienced commissioners after full hearing is immediately suspect. *Staff* v. *Hawkins*, 135 Conn. 316, 318, 64 A. 2d 176. It must, nevertheless, be considered. *Greenwich Gas Co.* v. *Tuthill*, 113 Conn. 684, 685, note, 155 A. 850.

The following facts found are fully supported by the evidence and are sufficient to present the questions of law involved in the appeal. Prior to Saturday, September 21, the plaintiffs were employed by Olin Industries, Inc., hereinafter called the defendant. Some of them were members of a union and some were not. They, with others, became dissatisfied with the work schedule in the mill and, in accordance with a predetermined plan, elected a committee to present their grievances to Mr. Boak, works manager, at the close of the midshift fifteen-minute lunch period. This method was not in accord with that provided in the defendant's rules. There was an established lunch hour in the first or 7 a.m. to 3 p.m. shift, from 12 to 12:15. After the close of this period, in response to their summons, Mr. Boak came to the rest room where the men had congregated, refused to listen to the committee and ordered all those present back to work. The men returned to work about 12:28 p. m. Later that same day the three committeemen on the first shift were dis-

charged. After the rest period ending at 7:15 p. m. in the second shift, the same thing occurred except that most of the men remained in the rest room. About 9 p. m. the men were informed that the mill was closed, but they refused to leave until the end of their shift, 11 p. m. Men who reported for work at 11 p. m. were refused admission. At 7 a. m., September 23 (Monday), only one plant gate was open and workmen were directed by armed guards to secure a special pass from the personnel office. Many of those reporting for work that morning did not avail themselves of the opportunity to secure a special pass, and later on that day certain workers paraded outside the plant with placards. Picketing took place until October 20. On September 23 the plaintiffs filed claims for unemployment compensation benefits. On September 24 the defendant, by letter, invited its brass mill employees, with the exception of the three committeemen on the first shift, to return to work. Sometime during the week ending September 28 the plaintiffs received form UC 16A, prepared by the defendant, notifying them of termination of their employment with the defendant. Each form gave as reason for termination "left voluntarily," "violation of company rules," or "instigating and/or participating in an illegal work stoppage." On Friday, September 27, counsel for the defendant met with representatives of the union, a group of employees, and state and federal labor conciliators, and the invitation of September 24 was again presented. The employees held a meeting on the following Sunday and voted not to accept the terms of the offer. On October 20 the union voted to return to work. On or about October 21 the plaintiffs, with other brass mill employees, presented themselves for work. Some were selected but the plaintiffs were not offered work then or thereafter.

A large number of persons joined in this appeal. The circumstances surrounding the individual cases were not identical. This is particularly true of the committee first selected to present the grievances of the employees to the management. The record makes plain, however, that at the hearing before the commissioners there was a definite agreement that the case should be considered along broad, general lines and that no distinctions would be made between the different plaintiffs.

The Unemployment Compensation Act (General Statutes, Cum. Sup. 1939, Chap. 280a, as amended; Rev. 1949, Chap. 374) does not define the words "labor dispute." No doubt the meaning those words had in the mind of the General Assembly was the same as that expressed in defining them in the act concerning injunctions in labor disputes. The term "labor dispute" includes "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment or concerning employment relations, or any controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the proximate relation of employer and employee." Cum. Sup. 1939, § 1420e (c) (Rev. 1949, § 7408). That there was a labor dispute in this case is clear. The only question which merits discussion is whether the unemployment of the plaintiffs was due to that fact. They claim that it was not, (1) because there was a lockout, and (2) because of the terms of the unemployment notice quoted above.

General Statutes, Sup. 1941, § 718f (b) (Rev. 1949, § 7508), provides for benefit eligibility disqualifications. By provision (3), an employee is disqualified

for benefits if his unemployment is due to a labor dispute, with certain exceptions, one of which is: ". . . any individual whose unemployment is due to a lockout shall not be disqualified, unless the lockout results from demands of the employees, as distinguished from an effort on the part of the employer to deprive employees of some advantage they already possess." The plaintiffs make an ingenious argument based on this proviso as applied to the facts found. Their difficulty is with the terms of the problem posed. They assume the question to be: Could the commissioners find that these plaintiffs were locked out due to no fault of their own? In fact, the question is: Was there evidence from which the commissioners could conclude, as they did, that the unemployment of the plaintiffs was caused by a labor dispute and that they came within none of the exceptions? Practice Book, §§ 265A, 256; *Beaverdale Memorial Park, Inc.* v. *Danaher,* 127 Conn. 175, 183, 15 A. 2d 17; *Bigelow Co.* v. *Waselik,* 133 Conn. 304, 309, 50 A. 2d 769; *Unemployment Compensation Commission* v. *Aragon,* 329 U. S. 143, 153, 67 S. Ct. 245, 91 L. Ed. 136. This conclusion was in general terms, without specific reference to a lockout, but the facts support it. The mill was closed following the refusal of the men to work, but for one day only. The men were formally invited on Tuesday, September 24, to return to work, and, from Monday the 23d on, the mill was in operation. The union in a stated meeting voted on Sunday the 29th not to accept the company offer. Clearly the commissioners could reasonably conclude that the plaintiffs stayed away from work voluntarily in furtherance of an effort to induce the company to comply with their demands, not because the doors of the mill were closed against them, and that they were not locked out.

The claim of the plaintiffs with reference to form

UC 16A is that this document is conclusive proof that they were discharged not later than 11 p. m. on Saturday, September 21, not because of the existence of a labor dispute but because of wilful misconduct or a voluntary leaving. They argue from this that no evidence of the existence of a labor dispute subsequent to that time is relevant.

If the premise is admitted, the conclusion does not necessarily follow. General Statutes, Sup. 1941, § 718f (b) (3) (Rev. 1949, § 7508), provides that an applicant for unemployment compensation shall be ineligible for benefits "during any week in which it shall be found by the administrator that his total or partial unemployment is due to the existence of a labor dispute at the factory, establishment or other premises at which he is or has been employed," with certain inapplicable exceptions. It is apparent that after the "waiting period week" provided for in the act, during which the individual receives no benefits, each week of unemployment is a severable unit. It was for the examiner in the first instance and for the commissioners on appeal to decide, on the evidence as to each week, whether the unemployment was due to the existence of a labor dispute. Sup. 1945, § 967h. Their conclusion that the unemployment of the plaintiffs for the period in question was due to the existence of a labor dispute is supported by the finding and must stand.

There is no error.

In this opinion the other judges concurred except DICKENSON, J., who concurred in the result.