Devine Brothers, Inc. *v.* International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers Local 191

Wynne, C. J., Baldwin, Daly, King and Murphy, Js.

Argued December 5, 1957—decided February 4, 1958

*Norman Zolot,* for the appellant (defendant).

*Robert B. Devine,* for the appellee (plaintiff).

KING, J. The plaintiff operates an establishment in Norwalk for the sale of ready mixed concrete, masons' supplies, coal and fuel oil. All sales are made to purchasers in Connecticut. On October 29, 1956, and continuing through November 7, 1956, the defendant labor union caused a person to patrol in front of the plaintiff's office, carrying a sign reading "Employees of Devine Bros., Inc. Do Not Be Unfair to Members of Organized Labor by Working for Lower Wages and Working Conditions . . . Organ-

ize. Join A.F.L." Most of the time the picket was alone, but on occasions he was accompanied by two other pickets. There was no violence, mass picketing, threatening or blocking of entrances to the plaintiff's premises. The picketing was conducted in a peaceful and orderly manner at all times.

While the defendant had succeeded in organizing and becoming the exclusive bargaining representative of the employees of several firms in the Norwalk area which were competitors of the plaintiff in one or more lines, none of the plaintiff's employees was a member of the defendant union. The defendant did not demand, or even request, that the plaintiff recognize it as the exclusive bargaining agent of any of the employees or that the plaintiff enter into any agreement so to do. None of the pickets is, or ever was, an employee of the plaintiff. The plaintiff had, as employees who were apparently eligible for membership in the defendant, eight drivers, who made deliveries of the plaintiff's products to customers, and also six helpers, a yardman and a mechanic. The court found that the purpose of the picketing was to persuade the drivers, helpers, yardman and mechanic to join the defendant in order to secure for themselves better wages and working conditions.

The court issued a temporary injunction, sharply limited in scope, forbidding the picketing of the plaintiff's place of business "in front of the office thereof located at 38 Commerce Street, Norwalk, Conn.," until a trial on the merits could be had. The defendant appealed on many grounds. At the outset we are faced with a jurisdictional question as to whether an appeal is possible in this case. This question must be resolved before we can consider the appeal on the merits. *Riley* v. *Board of Police Commissioners,* 145 Conn. 1, 6, 137 A.2d 759.

The taking of an appeal from the granting or denial of a temporary injunction is ordinarily impossible, since such an order is not a final judgment. *Olcott* v. *Pendleton,* 128 Conn. 292, 295, 22 A.2d 633. However, under § 3036d of the 1955 Cumulative Supplement (formerly § 7414) such an appeal lies if, but only if, the injunction was granted in a case "involving or growing out of a labor dispute." *H. O. Canfield Co.* v. *United Construction Workers,* 134 Conn. 358, 360, 57 A.2d 624. Unless the present case falls in that category, this appeal must be dismissed.

The court failed unequivocally to find whether this action was one "involving or growing out of a labor dispute." On this point the court found, as a subordinate fact, that "[n]o dispute has existed or exists between plaintiff and its employees concerning hours, wages or conditions of employment," and, as a conclusion, that "[n]o labor dispute exists between the plaintiff and its employees." These findings are inadequate on their face, since our definition of "labor dispute" in terms is made applicable "regardless of whether or not the disputants stand in the proximate relation of employer and employee." General Statutes § 7408 (c); *Alvarez* v. *Administrator,* 139 Conn. 327, 333, 93 A.2d 298.

The statutory definition of "labor dispute" is part of chapter 372, regulating the issuance of injunctions in actions involving or growing out of labor disputes. This definition has been held to be applicable under chapter 374, our Unemployment Compensation Act. *Bartlett* v. *Administrator,* 142 Conn. 497, 502, 115 A.2d 671. Like the rest of chapter 372, the definition is closely patterned on the Norris-LaGuardia Act. 47 Stat. 73, 29 U.S.C. § 113 (c); see *E. M. Loew's Enterprises, Inc.* v. *International Alliance,* 8 Conn. Sup. 324, 330. Indeed, we have referred

to chapter 372 as our "Little Norris-LaGuardia Act." *Kenmike Theatre, Inc.* v. *Moving Picture Operators,* 139 Conn. 95, 97, 90 A.2d 881. Cases in which the term "labor dispute" has been construed in connection with the applicability of statutes, such as ours, curtailing the power of courts to grant injunctive relief are collected in an annotation in 11 A.L.R.2d 1338, 1354-1359. As might be expected, in view of the varying phraseology of the statutes of the different states, the decisions as to the existence of a labor dispute are not always in accord even on substantially similar facts. However, as pointed out by the annotator at 11 A.L.R.2d 1354, one vital difference in the definitions of "labor dispute" contained in the statutes of the different states is the presence or absence of the proviso that the definition may be applicable "regardless of whether or not the disputants stand in the proximate relation of employer and employee." The language of this proviso is found in the Norris-LaGuardia Act; 47 Stat. 73, 29 U.S.C. § 113 (c); and in our act. General Statutes § 7408 (c). Where this language has been used, it has generally been construed as widening the applicability of the definition of "labor dispute" as that term is used in statutes, generally similar to ours, curtailing the granting of injunctive relief. 11 A.L.R.2d 1338, 1354.

The language of our definition is broad, and it has been liberally construed and applied in our cases. *E. M. Loew's Enterprises, Inc.* v. *International Alliance,* 127 Conn. 415, 421, 17 A.2d 525; *Conte* v. *Egan,* 135 Conn. 367, 371, 64 A.2d 534; *Alvarez* v. *Administrator,* 139 Conn. 327, 333, 93 A.2d 298; *Bartlett* v. *Administrator,* 142 Conn. 497, 503, 115 A.2d 671. We have not heretofore had occasion to consider the applicability of the definition to a case

such as this. However, the trial court did not find that a labor dispute existed, and we cannot change the subordinate facts in the finding so as to require a contrary ultimate conclusion. As a consequence, this appeal cannot be maintained and must be dismissed. We are concerned here only with a question of appellate jurisdiction involving an interlocutory, as distinguished from a final, judgment. The case has a high status of privilege in assignment for trial on the merits under Practice Book § 131 (4).

If the case is tried on its merits and an appeal is taken from the judgment, the finding should set forth the facts supporting whatever conclusion is reached on whether, in the light of the statutory definition, a labor dispute is involved. Cf. *Northam* v. *L. E. Bunnell Transportation Co.,* 118 Conn. 312, 313, 171 A. 837. This is, of course, quite apart from the finding required by §§ 7411 and 7412 of the General Statutes as a prerequisite to granting any injunctive relief in a case which involves or grows out of a labor dispute.

In a trial on the merits, the question whether the plaintiff is engaged in interstate commerce so as to affect the state's jurisdiction to act in the premises may be determined in the light of cases such as *Guss* v. *Utah Labor Relations Board,* 353 U.S. 1, 9, 77 S. Ct. 598, 1 L. Ed. 2d 601, and *Amalgamated Meat Cutters & Butcher Workmen* v. *Fairlawn Meats, Inc.,* 353 U.S. 20, 23, 77 S. Ct. 604, 1 L. Ed. 2d 613, on the one hand, and cases such as *International Brotherhood of Teamsters, Local 695, A.F.L.* v. *Vogt, Inc.,* 354 U.S. 284, 77 S. Ct. 1166, 1 L. Ed. 2d 1347, on the other hand.

The appeal from the granting of the temporary injunction is dismissed.

In this opinion the other judges concurred.