LAVERY'S MAIN STREET GRILL, INC. *v.* HOTEL AND RESTAURANT EMPLOYEES-BARTENDERS UNION LOCAL 288 ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued December 2, 1958—decided January 8, 1959

*John A. Arcudi,* with whom was *Michael L. Riccio,* for the appellants-appellees (defendants).

*Vincent M. Simko,* for the appellee-appellant (plaintiff).

KING, J. The defendants, a labor union and two of its officers, appealed from a judgment, entered October 16, 1957, granting a permanent injunction restraining them "from picketing the place of business of the plaintiff . . . for the purpose of coercing the plaintiff to sign a contract with the defendant union which would force the plaintiff to require its employees to become members of the defendant union as a condition of continuing their employment with the plaintiff."

The finding, with such corrections as the defendants have shown themselves entitled to under our rules, may be summarized as follows: There was not, and at no time had there been, any dispute between the plaintiff and any of its employees concerning hours, wages, conditions of employment or any other matter. No past or present employee of the plaintiff took any part in the picketing of the plaintiff's place of business or went on strike. The picketing was peaceful and was enjoined on the ground that it was for an unlawful purpose. Peaceful picketing as such was not enjoined, but only that having the specific purpose carefully set out in the judgment file. See *International Brotherhood of Teamsters* v. *Hanke,* 339 U.S. 470, 480, 70 S. Ct. 773, 94 L. Ed. 995; *International Brotherhood of Teamsters* v. *Vogt, Inc.,* 354 U.S. 284, 294, 77 S. Ct. 1166, 1

L. Ed. 2d 1347; *Youngdahl* v. *Rainfair, Inc.*, 355
U.S. 131, 136, 78 S. Ct. 206, 2 L. Ed. 2d 151. The
plaintiff operated a small restaurant, consisting of a
bar and grill, in Bridgeport. It had three full-time
employees, one of whom, the permittee under the
state liquor control law, supervised the sale of liquor
and any activities of the other employees in connec-
tion therewith. Early in 1954, the defendant union
decided to secure written union shop contracts from
the various establishments in which its members
were employed. Such a contract was prepared in
April, 1956, and submitted to the plaintiff. It was
first shown to William Schlacter, an employee of the
plaintiff and a member of the union. He read it
over and stated that it was a good contract. He was
requested to have the other two employees, also
union members, read it and then to turn it over to
the plaintiff. Hugh Neary, the president, treasurer
and general manager of the plaintiff, read over the
contract with the three employees and told them he
would provide for any benefit mentioned in the con-
tract which they did not then have or would do even
better. The plaintiff did not sign the contract.

Thereafter, in the spring of 1956, two of the three
employees withdrew from the union and turned in
their union books. A union placard which had been
on the premises was removed. After the withdrawal
of the two employees from the union, it filed charges
of unfair labor practices with the state labor rela-
tions board. Parenthetically, it may be observed that
it does not appear that there was then any thought
or claim that the plaintiff's business had an inter-
state character which would preclude state juris-
diction. At about the same time, in May, 1956, the
union commenced picketing. After a meeting be-
tween representatives of the plaintiff, the union and

the state labor relations board, the union withdrew its unfair labor practice charges and also its pickets. Further negotiations were then contemplated. In November, 1956, the union submitted the proposed union shop contract which is actually involved in this case. It is slightly different from, but basically the same as, the original contract. The new contract includes provisions requiring that all employees "remain in good standing at all times with the Union as a condition of employment" and that the employer recognize the union "as the sole bargaining agent for all [its] employees coming under the jurisdiction of the union." None of the plaintiff's employees was consulted about this contract or any negotiations regarding it. In April, 1957, the union itself dropped from its membership the third employee of the plaintiff because he had failed to pay dues for over a year. While all three employees were members of the union prior to May, 1956, the union at no time was appointed or recognized as their bargaining representative, nor has there ever been a contract between the plaintiff and the union. For some time prior to May 15, 1957, the date when the picketing involved in this case commenced, none of the plaintiff's employees had been a member of the union. A temporary injunction stopped the picketing on June 3, 1957.

The defendants attack the findings as to union membership mainly on the claim that since all three employees had been members of the union prior to the spring of 1956, they necessarily would have remained members but for intimidation or coercion on the part of Neary. There was neither direct nor circumstantial evidence of intimidation or coercion on his part, and the court was fully justified in finding, as in effect it did, that the employees themselves

did not wish the plaintiff's restaurant to become a union shop, even though they had been willing to belong to the union before it attempted to force the plaintiff to enter into a union shop contract.

"[E]ven peaceful picketing may be unlawful if it is for an unlawful purpose." *Kenmike Theatre, Inc.* v. *Moving Picture Operators,* 139 Conn. 95, 98, 90 A.2d 881. If the object of picketing is to compel the employer to violate the provisions of subdivision (10) of § 7392 of the General Statutes,[1] then the object or purpose of the picketing is unlawful. Ibid. Section 7391[2] permits employees to decide for themselves whether they should join a labor organization, except where a closed or union shop agreement has been made between the employer and a union under § 7392 (5) and the union is a labor organization which is the representative of employees as provided in what is now § 3033d of the 1955 Cumulative Supplement. Id., 99. The defendants claim that the *Kenmike* decision, supra, was based on the fact that in that case none of the employees had ever been members of the union. There is nothing in the opinion justifying such a construction. The defendants also claim that the interpretation which that decision placed upon the provisions of § 7391 was not only erroneous but pure dictum. In the first place, any foundation for the claim that the construction was dictum is removed by a reading

[1] "Sec. 7392. UNFAIR LABOR PRACTICES. It shall be an unfair labor practice for an employer: . . . (10) to do any acts . . . which restrain, coerce or interfere with employees in the exercise of the rights set forth in section 7391."

[2] "Sec. 7391. RIGHTS OF EMPLOYEES. Employees shall have the right of self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choice and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from actual interference, restraint or coercion by employers."

of the concurring opinion and also by the interpretation placed on the *Kenmike* decision in *Bartlett* v. *Administrator,* 142 Conn. 497, 504, 115 A.2d 671. Secondly, the construction which the *Kenmike* opinion placed on § 7391 has been independently reached by courts in other jurisdictions in construing generally similar statutes, and there is no justification for changing it. See, for instance, *Pappas* v. *Stacey,* 151 Me. 36, 116 A.2d 497, and a collection of cases cited in note, 32 A.L.R.2d 1026, 1043-1051.

There was no error in the court's conclusion that picketing for the purpose prohibited in the injunction was unlawful. The vice in the picketing was the unlawfulness of its purpose, not any unlawfulness in the manner in which it was conducted. Therefore the injunction, which, as already pointed out, carefully limited its prohibition to picketing for the stated unlawful purpose, provided the minimum restriction which would effectuate, and protect against violation, the law and policy of this state.

The claim that the picketing was permissible as an exercise of the right of free speech is of no avail in the face of the unlawfulness of its purpose and the limited scope of the injunction. *Kenmike Theatre, Inc.* v. *Moving Picture Operators,* 139 Conn. 95, 101, 90 A.2d 881; *International Brotherhood* v. *Vogt, Inc.,* 354 U.S. 284, 293, 77 S. Ct. 1166, 1 L. Ed. 2d 1347.

A further basic claim of the defendants is that since the plaintiff's business affected interstate commerce, no arm of the state, judicial or otherwise, had jurisdiction to act in the matter. See *Devine Bros., Inc.* v. *International Brotherhood,* 145 Conn. 77, 82, 139 A.2d 60. The court found that the plaintiff's business was local in character and that the plaintiff was not engaged in activities affecting interstate commerce within the meaning of the Labor

Management Relations Act, 1947. 61 Stat. 136, 161, 138, 29 U.S.C. §§ 141 (b), 142 (1), 151, and particularly 152 (6), (7). The plaintiff had annual gross receipts of about $78,000. Its annual purchases of food and supplies amounted to about $42,000 and were all made from Connecticut wholesalers. Less than 1 per cent of its patrons were from outside Connecticut. There is no claim that the picketing as such affected interstate commerce. The only possible basis for the defendants' claim of lack of jurisdiction is that the picketing affected a business which in turn affected interstate commerce under the so-called indirect interstate import rule, in that the plaintiff estimated, and the court found, that about 95 per cent of the products purchased from wholesalers had their origin—that is, were either produced or manufactured—outside Connecticut. There is nothing to indicate that the plaintiff's restaurant was in any way unique, nor that this percentage would not have been substantially the same in the case of any other similar establishment located in Connecticut.

The defendants correctly claim that since this controversy involves only peaceful picketing, if it is within the jurisdiction of the national labor relations board under § 10 (a) of the federal act; 61 Stat. 146, 29 U.S.C. § 160 (a); because it involves an unfair labor practice; 61 Stat. 140, 29 U.S.C. §§ 157, 158; and affects interstate commerce within the definition of the federal act; 61 Stat. 138, 29 U.S.C. § 152 (7); then state action is precluded. *Garner* v. *Teamsters Union,* 346 U.S. 485, 490, 74 S. Ct. 161, 98 L. Ed. 228; *Youngdahl* v. *Rainfair, Inc.,* 355 U.S. 131, 139, 78 S. Ct. 206, 2 L. Ed. 2d 151 & note, 1630. The sole method of transferring jurisdiction to state authorities in such a situation is by action by the national labor relations board in ceding

jurisdiction to the state under the provisions of § 10 (a) of the federal act. That action was not taken here. This rule of law applies even though the board itself refuses to act or to take jurisdiction, thereby leaving a "no man's land," subject to regulation by no agency or court. *Guss* v. *Utah Labor Relations Board,* 353 U.S. 1, 10, 77 S. Ct. 598, 1 L. Ed. 2d 601; *Amalgamated Meat Cutters* v. *Fairlawn Meats, Inc.,* 353 U.S. 20, 23, 77 S. Ct. 604, 1 L. Ed. 2d 613; *San Diego Building Trades Council* v. *Garmon,* 353 U.S. 26, 28, 77 S. Ct. 607, 1 L. Ed. 2d 618.

The court's finding that the plaintiff's business did not affect interstate commerce cannot, however, be successfully challenged. In both the *Guss* and *San Diego* cases, supra, it was uncontroverted that the business affected interstate commerce within the meaning of the federal act. In the *Fairlawn* case, supra, while the sales in the retail meat markets involved were all intrastate, out of a total of annual purchases from wholesalers of about $900,000, slightly more than $100,000 worth came directly from without the state, and as much or more comprised indirect interstate imports. In *Youngdahl* v. *Rainfair, Inc.,* supra, 137, it was undisputed that the clothing factory involved was engaged in interstate commerce. Not every business so affects interstate commerce that it is under the jurisdiction of the national labor relations board. But that board does have jurisdiction in the case of any business, large or small, which, even though intrastate in basic character, "affects commerce" within the definition of the federal act. *National Labor Relations Board* v. *Fainblatt,* 306 U.S. 601, 604, 59 S. Ct. 668, 83 L. Ed. 1014; *Garner* v. *Teamsters Union,* supra, 488.

In accordance with the alternative claim of the defendants, we may assume, without in any way decid-

ing, that the picketing here was an unfair labor practice under the Labor Management Relations Act, 1947. 61 Stat. 140, 141, 29 U.S.C. § 158 (a) (1), (3), (b) (2). In cases of this type, it becomes necessary for a state court to determine whether the business so affects interstate commerce as to preclude state action. *Devine Bros., Inc.* v. *International Brotherhood,* 145 Conn. 77, 82, 139 A.2d 60. This is a question of fact which may be relatively simple or relatively difficult, and of course is always subject to review in the United States Supreme Court. Here the question is factually clear. In *International Brotherhood* v. *Vogt, Inc.,* 354 U.S. 284, 293, 77 S. Ct. 1166, 1 L. Ed. 2d 1347, for instance, the opinion indicates no attempt to claim that the operation of the gravel pit was a business affecting interstate commerce. In *Pappas* v. *Stacey,* 151 Me. 36, 116 A.2d 497, a restaurant in Portland was picketed for the sole purpose of compelling the employer to put pressure on his employees to join the union in violation of the declared policy of Maine. The restaurant had an average of twenty-five regular employees and five other sporadic employees. It is hardly conceivable that such a large restaurant, in Portland, Maine, could have had less indirect interstate imports than the plaintiff's little restaurant in Bridgeport. Yet neither the Supreme Court of Maine nor the Supreme Court of the United States, in the extended discussion of this case in the *Vogt* opinion, supra, even suggested that the business of the Portland restaurant was, or might be, of an interstate character such as to preclude state action. The court's finding that the plaintiff's restaurant business in Bridgeport did not affect interstate commerce within the controlling definition in the federal act was not only fully supported by the evidence

but was the only conclusion which could have been reasonably reached under the facts of this case.

While the defendants made many claims in their very extended brief, we have discussed only the three which were properly raised in the trial court. Practice Book § 154. We have, however, considered their other claims, in which they attack the power of the court to issue the injunction under the limitations of General Statutes §§ 7411 and 7412, part of our "Little Norris-LaGuardia Act," and find none of them well taken. *Kenmike Theatre, Inc.* v. *Moving Picture Operators,* 139 Conn. 95, 97, 90 A.2d 881; *Devine Bros., Inc.* v. *International Brotherhood,* supra. In one of these claims the defendants contend that money damages constituted an adequate remedy. In fact, no damages were awarded. See *San Diego Building Trades Council* v. *Garmon,* 353 U.S. 26, 29, 77 S. Ct. 607, 1 L. Ed. 2d 618. It is true that a suit for the recovery of damages for a tort actionable under state law may be maintained even though the tort constitutes, or might be held to constitute, an unfair labor practice under the federal act and even though that act is applicable because the tort occured during a labor dispute of a character affecting interstate commerce. *International Union* v. *Russell,* 356 U.S. 634, 635, 78 S. Ct. 932, 2 L. Ed. 2d 1030; *United Construction Workers* v. *Laburnum Construction Corporation,* 347 U.S. 656, 657, 74 S. Ct. 833, 98 L. Ed. 1025. Substantially the same rule also applies to at least some suits which sound in contract. *International Assn.* v. *Gonzales,* 356 U.S. 617, 620, 78 S. Ct. 923, 2 L. Ed. 2d 1018. The recovery of damages, however, could properly be found, as it was here, an inadequate remedy, in the light of the subordinate findings that truck drivers refused to cross the picket line to make deliveries to the plain-

tiff, thus preventing it from obtaining the merchandise necessary to keep its restaurant in operation, and that customers refused to enter the restaurant because of the picketing. We find nothing improper or unreasonable in the trial court's conclusion that no adequate remedy other than injunctive relief was available in the premises. See *Mattis* v. *Lally,* 138 Conn. 51, 56, 82 A.2d 155.

The plaintiff, in a purported appeal, filed an assignment of error attacking the court's finding that there was a labor dispute. This appeal was wholly improper and must be dismissed. *Bartlett* v. *Administrator,* 142 Conn. 497, 509, 115 A.2d 671. If we consider the assignment of error, apart from the plaintiff's appeal, it still is unnecessary to review the court's finding, since in this opinion we have assumed, without in any way deciding, that the court correctly held that a labor dispute existed within the broad definition in our Labor Relations Act. General Statutes § 7408 (c); *Kenmike Theatre, Inc.* v. *Moving Picture Operators,* supra, 98; *Devine Bros., Inc.* v. *International Brotherhood,* supra, 80; *Loew's Enterprises, Inc.* v. *International Alliance,* 127 Conn. 415, 421, 17 A.2d 525.

There is no error on the defendants' appeal; the plaintiff's appeal is dismissed.

In this opinion the other judges concurred.