The defendant's plea in abatement is for want of jurisdiction on the ground that the plaintiff is engaged in interstate commerce and that allegations in the plaintiff's complaint set forth unfair labor practices, under the terms of the National *Page 253 
Labor Relations Act of 1947 (61 Stat. 136, 29 U.S.C. § 151-168), which lie within the exclusive jurisdiction of the national labor relations board; and that the allegations in the complaint set forth facts of the defendant union's conduct which, if not prohibited by said act, may be reasonably deemed to come within the protection afforded by that act to the defendant so that this court is without jurisdiction to hear the same for want of jurisdiction, since such matters lie within the exclusive jurisdiction of the national labor relations board.
The parties have agreed that the evidence adduced at the hearing on the temporary injunction before Sidor, J., shall be considered as the evidence before this court on the instant plea. The parties also agreed as indicated in the stipulation on facts on the following: (a) That the nature of the plaintiff's business has not changed materially since the hearing on the temporary injunction. (b) For the calendar year 1958, the plaintiff purchased and received directly from outside the state of Connecticut goods and services in excess of $500,000. (c) The plaintiff's gross yearly volume of business for the calendar year of 1958 was in excess of $1,000,000. (d) The defendant union continued to picket the plaintiff's premises from across the street from its office for about one year after the issuance of the restraining order and has ceased such picketing at the present time. (e) The defendant union states that it intends in the future to renew its picketing of the plaintiff's premises for the same purposes. (f) Since the issuance of the temporary injunction, the defendant union has organized the employees of other businesses dealing with ready mixed concrete in Norwalk.
The plaintiff operates an establishment in Norwalk for the sale of ready mixed concrete, masons' supplies, coal and oil. All sales with some minor *Page 254 
exceptions are made to purchasers in Connecticut. On October 29, 1956, and continuing through November 7, 1956, the defendant union caused a person to patrol in front of plaintiff's office carrying a sign reading: "Employees of Devine Bros., Inc. Do Not Be Unfair to Members of Organized Labor by Working for Lower Wages and Working Conditions . . . Organize. Join A.F.L." Most of the time the picket was alone, but on occasions was accompanied by two other pickets. After November 27, 1956, the same picket, using the same sign, picketed the plaintiff's premises across the street from the office. This picketing continued for about a year but has ceased at the present time. There was no violence, mass picketing, threatening or blocking of entrances to the plaintiff's premises. The picketing was conducted in a peaceful and orderly manner at all times.
While the defendant has succeeded in organizing and becoming the exclusive bargaining agent of the employees of several firms in the Norwalk area which were competitors of the plaintiff in one or more lines and since the issuance of the temporary injunction has organized the employees of other businesses dealing with ready mixed concrete, none of the plaintiff's employees was or has become a member of the defendant union. The defendant did not demand, or even request, that the plaintiff recognize it as the exclusive bargaining agent of any of the plaintiff's employees or that the plaintiff enter into any agreement to do so. None of the pickets is or ever was an employee of the plaintiff. The plaintiff had, as employees who were apparently eligible for membership in the defendant union, eight drivers, six helpers, a yardman and a mechanic. The purpose of the picketing was to persuade the drivers, helpers, yardman and mechanic to join the defendant union in order to secure for themselves better wages and working conditions. *Page 255 
The court issued a temporary injunction sharply limited in scope, forbidding the picketing of the plaintiff's place of business "in front of the office thereof located at 38 Commerce Street, Norwalk, Conn.," until a trial on the merits could be had. The plaintiff appealed to the Supreme Court, where the appeal was dismissed. Devine Bros., Inc. v. InternationalBrotherhood, 145 Conn. 77. In dismissing the appeal from the granting of the temporary injunction, the Supreme Court stated (p. 82): In a trial on the merits, the question whether the plaintiff is engaged in interstate commerce so as to affect the state's jurisdiction to act in the premises may be determined in the light of cases such as Guss v. UtahLabor Relations Board, 353 U.S. 1, 9, . . . and AmalgamatedMeat Cutters Butcher Workmen v. FairlawnMeats, Inc., 353 U.S. 20, 23, . . . on the one hand, and cases such as International Brotherhoodof Teamsters, Local 695, A.F.L. v. Vogt, Inc.,354 U.S. 284, . . . on the other hand."
In the case of Lavery's Main Street Grill, Inc. v.Hotel Restaurant Employees-Bartenders Union,146 Conn. 93, 100, the Supreme Court stated: "The defendants correctly claim that since this controversy involves only peaceful picketing, if it is within the jurisdiction of the national labor relations board under § 10(a) of the federal act; 61 Stat. 146,29 U.S.C. § 160 (a); because it involves an unfair labor practice; 61 Stat. 140, 29 U.S.C. § 157, 158; and affects interstate commerce within the definition of the federal act; 61 Stat. 138, 29 U.S.C. § 152 (7); then state action is precluded. Garner v. TeamstersUnion, 346 U.S. 485, 490, 74 S.Ct. 161, 98 L.Ed. 228;Youngdahl v. Rainfair, Inc., 355 U.S. 131, 139,78 S.Ct. 206, 2 L.Ed.2d 151 note, 1630." Thus it is apparent there are two necessary conditions to bar state court jurisdiction: (a) an unfair labor practice under the federal act is involved; and (b) *Page 256 
interstate commerce within the definition of the federal act is affected. Based upon the limited evidence before this court, it appears, and the court finds, this controversy involves only peaceful picketing. Thus, in order to come within the jurisdiction of the national labor relations board under § 10(a) of the federal act; 61 Stat. 146, 29 U.S.C. § 160 (a); the two above enumerated conditions must be present.
In Guss v. Utah Labor Relations Board, 353 U.S. 1,10, and San Diego Building Trades Council v.Garmon, 353 U.S. 26, 28, it was uncontroverted that the business affected interstate commerce within the meaning of the federal act. In the San Diego case, supra, two retail lumber shops were operated by a partnership within the state of California. It purchased in excess of $250,000 of goods from outside the state for resale at retail, and practically all the sales were made within the state. The United States Supreme Court concurred with the state court that the business affected commerce and was subject to the federal act. In the Guss case, supra, materials purchased from out of the state amounted to less than $50,000. The United States Supreme Court found the business affected commerce within the meaning of the National Labor Relations Act and that the national labor relations board had jurisdiction. The court held that the federal act deals expressly with the conduct charged to the appellant which was the basis of the state tribunal's action. Therefore, if the national board had not declined jurisdiction, state action would have been precluded by the decision reached in Garner v. TeamstersUnion, 346 U.S. 485. Since the national board had not entered into any cession agreement with the Utah board pursuant to § 10(a) of the federal act, the state board was without jurisdiction. In AmalgamatedMeat Cutters Butcher Workmen v. Fairlawn *Page 257 Meats, Inc., 353 U.S. 20, 23, while the sales in the retail meat markets involved were all intrastate, out of a total of annual purchases from wholesalers of about $900,000, slightly more than $100,000 came directly from without the state, and as much or more comprised indirect interstate imports.
In Lavery's Main Street Grill, Inc. v. Hotel Restaurant Employees-Bartenders Union, 146 Conn. 93,101, our Supreme Court held: "Not every business so affects interstate commerce that it is under the jurisdiction of the national labor relations board. But that board does have jurisdiction in the case of any business, large or small, which, even though intrastate in basic character, `affects commerce' within the definition of the federal act." National LaborRelations Board v. Fainblatt, 306 U.S. 601, 604
. . .; Garner v. Teamsters Union, [346 U.S. 485,488]. In the Lavery case, supra, the court held the plaintiff's restaurant business in Bridgeport did not affect interstate commerce within the controlling definition in the federal act. The plaintiff had annual gross receipts of about $78,000. Its annual purchases of food and supplies amounted to about $42,000 and were all made from Connecticut wholesalers. The court said (p. 100) the only possible basis for the defendant's claim of lack of jurisdiction is that the picketing affected a business which in turn affected interstate commerce under the so-called indirect import rule, in that the plaintiff estimated that about 95 per cent of the products purchased from the wholesalers had their origin — that is, were either produced or manufactured — outside Connecticut. The court found no merit to this claim.
In the case at bar, it is established the plaintiff purchased coal, oil and masons' supplies for its business from outside the state of Connecticut in excess of $500,000. Its sales for the same period amounted to more than $1,000,000, mostly in sales to Connecticut *Page 258 
purchasers, of which over 50 per cent are sales of masons' supplies, principally made to contractors and builders. In the Lavery case, supra, our Supreme Court stated (p. 102): "In cases of this type, it becomes necessary for a state court to determine whether the business so affects interstate commerce as to preclude state action. . . . This is a question of fact which may be relatively simple or relatively difficult . . . ." The term "affecting commerce" means "in commerce, or burdening or obstructing commerce . . . or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." 61 Stat. 138, 29 U.S.C. § 152
(7). In the instant case, as pointed out, the plaintiff's business involves the importation from outside the state of coal, oil, cement and masons' materials exceeding $500,000 yearly. These goods and materials were delivered to the plaintiff's place of business in Norwalk by various methods of transportation originating from outside the state of Connecticut. Such deliveries were made by rail, water barges and motor carriers.
It is the purpose and policy of the National Labor Relations Act, in order to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define and prescribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce. 61 Stat. 136; 29 U.S.C. § 141
(b). The definition of the term "affecting commerce" in the National Labor Relations Act of 1935, *Page 259 
known as the Wagner Act (49 Stat. 450), was left unchanged by the Taft-Hartley amendments in 1947.61 Stat. 138, 29 U.S.C. § 152 (7). For a number of years, the board decided case by case whether to take jurisdiction. In 1950, concluding that "experience warrants the establishment and announcement of certain standards" to govern the exercise of its jurisdiction;Hollow Tree Lumber Co.,
91 N.L.R.B. 635, 636; the board published standards, largely in terms of yearly amounts of interstate inflow and outflow. In 1954, a sharply divided board; BreedingTransfer Co., 110 N.L.R.B. 493; revised the jurisdictional standards upward. See NLRB Press Releases, October 2, 1958, 43 L.R.R.M. 1057, 1060.
These standards for asserting jurisdiction have been changed considerably since the hearing on the temporary injunction. It would appear the present standards apply to the plaintiff in the instant matter, irrespective of whether or not it is a retail or nonretail business establishment. Its interstate purchases will directly affect commerce within the meaning of the act. It would appear that any controversy which would make the delivery of such materials impossible or impracticable would affect interstate commerce within the definition of the federal act. The court finds the plaintiff's business affects interstate commerce within the definition of the federal act.
The limited evidence before this court shows there was no violence, mass picketing, threatening or blocking of entrances to the plaintiff's premises. The picketing was conducted in a peaceful and orderly manner at all times. The remaining question is then, that since this controversy involves only peaceful picketing, and since the court has found the plaintiff's business does affect interstate commerce, is the controversy one which involves an unfair labor practice to preclude state action? The sole *Page 260 
method of transferring jurisdiction to state authorities in such a situation is by action by the national labor relations board in ceding jurisdiction to the state under the provisions of § 10(a) of the federal act. 61 Stat. 146, 29 U.S.C. § 160 (a). This rule of law applies even though the board refuses to act or to take jurisdiction, thereby leaving a "no man's land" subject to regulation by no agency or court.Lavery's Main Street Grill, Inc. v. Hotel RestaurantEmployees-Bartenders Union, 146 Conn. 93,101, and cited cases.
The defendant contends its action was organizational picketing wherein the union sought the membership of the plaintiff's employees to improve their working conditions and to eliminate the economic threat created by their lower wages and working conditions and consequently such conduct on its part is clearly protected activity within the meaning of the National Labor Relations Act and the state court is without jurisdiction. Hotel Employees UnionLocal 255 v. Sax Enterprises, Inc., 43 L.R.R.M. 2344 (Jan. 12, 1959). In that case it was held the "state courts of Florida were without jurisdiction to enjoin this organizational picketing, whether it was actively protected by Sec. 7 of the National Labor Relations Act, as amended, 29 U.S.C. § 157, Hill v. Floridaex rel. Watson, 325 U.S. 538, or prohibited by Section 8(b) 4 of the Act; 29 U.S.C. § 158(b) 4,Garner v. Teamsters Union, 346 U.S. 485. See,Weber v. Anheuser-Busch Inc., 348 U.S. 468. This follows even though the National Labor Relations Board refused to take jurisdiction, AmalgamatedMeat Cutters v. Fairlawn Meats, 353 U.S. 20. The record does not disclose violence sufficient to give the state jurisdiction under United AutomobileWorkers v. Wisconsin Board, 351 U.S. 266. In none of the twelve cases did the Florida trial courts make any finding of violence and in some an affirmative *Page 261 
finding of no violence was made." Upon the limited evidence before it, this court is disposed to find that the defendant union's action was organizational picketing.
Assuming that the defendant's action was not organizational but for other reasons, such as to force the plaintiff to coerce its employees into joining the defendant union in violation of their rights under our state Labor Relations Act; Rev. 1949, §§ 7392 (10), 7391; the defendant contends it does not follow that this court has jurisdiction, since peaceful picketing is subject to the exclusive control of the national labor relations board where the dispute affects interstate commerce, and cites Weber v. Anheuser-Busch,Inc., 348 U.S. 468. In that case the United States Supreme Court held the state court had no jurisdiction, that it vested exclusively with the national labor relations board. It pointed out (p. 481) that state courts may have difficulty in deciding whether the subject matter was within the board's exclusive jurisdiction.
The defendant further contends that if it is assumed that the facts show the type of coercion claimed by the plaintiff this court has no jurisdiction to regulate such peaceful activity. The defendant cites Garner v. Teamsters Union, 346 U.S. 485,488, which held: "Congress has taken in hand this particular type of controversy where it affects interstate commerce. In language almost identical to parts of the Pennsylvania statute, it has forbidden labor unions to exert certain types of coercion on employees through the medium of the employer. It is not necessary . . . for us to surmise how the National Labor Relations Board might have decided this controversy had petitioners presented it to that body. The power and duty of primary decision lies with the Board, not with us." *Page 262 
In Kenmike Theatre, Inc. v. Moving PictureOperators, 139 Conn. 95, 98, our Supreme Court held, "even peaceful picketing may be unlawful if it is for an unlawful purpose." If the object of picketing is to compel the employer to violate the provisions of § 7392 (10) of the General Statutes, then the object or purpose of the picketing is unlawful. Under the Garner case, supra, it would appear, however, that a state court may not enjoin under its own public policy, or under its own labor relations act, conduct which has been made an unfair labor practice under the federal act.
The plaintiff, in addition to claiming the controversy does not affect interstate commerce, contends it is not an unfair labor practice under § 8(b) of the federal act. 61 Stat. 141, 29 U.S.C. § 158 (b). In other words, the plaintiff's claim is that the conduct of the defendant union is in the category of stranger picketing and that there is nothing under the federal act or otherwise which either prohibits or protects such conduct. The plaintiff in effect says that here there is no strike but merely picketing for an alleged illegal purpose and that such conduct is not defined as an unfair labor practice in § 8 of the act, hence this state court has jurisdiction.
It appears to this writer that the organizational type of picketing in the instant matter, as disclosed by the evidence adduced during the hearing on the temporary injunction, was for the purpose of compelling the plaintiff to commit an unlawful act, by the application of economic pressure by the defendant union. Such an application of economic pressure by a union against an employer for such a purpose is condemned as an unfair labor practice under the federal act. Garner v. Teamsters Union, 346 U.S. 485. It is noteworthy that in Weber v. Anheuser-Busch,Inc., 348 U.S. 468, 480, the Supreme Court, *Page 263 
referring to the Garner case, said: "But as the opinion in that case recalled, the Labor Management Relations Act `leaves much to the states, though Congress has refrained from telling us how much.' . . . This penumbral area can be rendered progressively clear only by the course of litigation." In effect, the defendant union, by the picketing it used in the instant case, intended to force the plaintiff to bargain with it as the representative of its employees. It was for the purpose of compelling the plaintiff to commit an act unlawful under Taft-Hartley. Such an application of economic pressure for such a purpose is condemned as an unfair labor practice.
As the United States Supreme Court has observed, the picketing, even though peaceful, is a form of inducement and encouragement. InternationalBrotherhood of Electrical Workers v. NationalLabor Relations Board, 341 U.S. 694, 701. "To exempt peaceful picketing from the condemnation of § 8(b)(4)(A) [of the federal act] as a means of bringing about a secondary boycott is contrary to the language and purpose of that section. The words `induce or encourage' are broad enough to include in them every form of influence and persuasion." In short — whether the picketing is considered recognitional or organizational, whether the activities of the defendant union are condemned by the federal statute as an unfair labor practice or by it protected as permissible conduct — our courts may not exercise jurisdiction. "It is not necessary or appropriate for us," the United States Supreme Court declared in the Garner case, supra, 489, "to surmise how the National Labor Relations Board might have decided this controversy had petitioners presented it to that body. The power and duty of primary decision lies with the Board, not with us." See AmalgamatedMeat Cutters v. Fairlawn Meats, Inc., 353 U.S. 20; *Page 264 San Diego Building Trades Council v. Garmon,353 U.S. 26; Youngdahl v. Rainfair, Inc., 355 U.S. 131.
The instant case does not involve violence or intimidation. Here is simply a case of peaceful picketing against which Congress in the act has provided the complete remedy. In this context of labor controversy, the legality of peaceful picketing may not be decided on the common law of torts; rather the conflicting interests of the union, the employer, the workers and the community must be weighed according to the statutory scheme. Since the states in matters of peaceful picketing may not invade the province of the board, it is clear that the federal courts have no greater power. Aetna Freight Lines,Inc. v. Clayton, 228 F.2d 384, 388. It may be true that a state court may have difficulty in deciding whether the subject matter was within the board's exclusive jurisdiction. In Weber v. Anheuser-Busch,Inc., 348 U.S. 468, 481, the Supreme Court declared: "But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance."
Here, on the basis of the plaintiff's allegations, the plaintiff could have presented its grievance to the national labor relations board. The defendant was subject to being summoned before that body to justify its conduct. The grievance is not subject to litigation in this court.
The exclusive jurisdiction over the instant subject matter, based upon the evidence before this court, *Page 265 
lies with the national labor relations board, and this court is without jurisdiction.
 The plea in abatement is sustained.
Enter judgment accordingly.