STATE OF CONNECTICUT *v.* FRANCIS J. McDERMOTT

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 10-15389

Argued July 26—decided December 17, 1965

*John A. Arcudi,* of Bridgeport, for the appellant (defendant).

*Harold B. Dean,* assistant prosecuting attorney, for the appellee (state).

DEARINGTON, J. The defendant was convicted on a charge of trespassing in violation of § 53-103 of the General Statutes[1] and has appealed. In his appeal, he has assigned error in the court's failure to correct the finding and in its conclusions.

The defendant's first three assignments of error relate to the trial court's failure to find certain facts set forth in paragraphs appearing in the defendant's draft finding. Under our procedure, no draft finding is required in a court case; such

---

[1] "Sec. 53-103. TRESPASS. Any person who, without right, enters or remains upon the premises of another after having been forbidden to do so by the owner of such premises or his authorized agent, either directly or by clear and legible signs posted thereon, shall be fined not more than fifty dollars."

a finding, however, may be helpful to the court. But a trier is not bound by paragraphs appearing in a draft finding. *Neubauer* v. *Liquor Control Commission,* 128 Conn. 113, 116; see *Humphrys* v. *Beach,* 149 Conn. 14, 20. A cause is to be determined by the facts found by the court. *Turner* v. *Connecticut Co.,* 91 Conn. 692, 696. In this respect the defendant is not entitled to any corrections in the finding.

The defendant has assigned no grounds of error in his motion to correct the finding. Practice Book §§ 622, 981; Maltbie, Conn. App. Proc. § 173; see Practice Book, Form No. 819. Such a deviation from our rules would justify a refusal to consider further each of his assignments of error. *Siller* v. *Philip,* 107 Conn. 612, 616. We have, however, examined each in order that no injustice result to the defendant. *O'Keefe* v. *Bassett,* 132 Conn. 659, 660. He first contends that the court failed to find certain facts relating to his activities while he was in the personnel manager's office and in the production area. This contention merits little consideration, since these facts are substantially embodied in the finding. He further contends that the court erred in failing to find that he stated to an official of Robertson that he had a right to remain in the production area "since under the national and state labor laws and under the labor contract he had a right to be there." There is no evidence that the defendant made such a statement. He further assigns error in the court's finding of certain facts, presumably because they were found without evidence. On this point, the court found that the discussions to be held for the purpose of ascertaining whether there was a grievance were preliminary in nature, and further that the defendant, without permission from any company employee, proceeded to the production area. There was adequate evidence to support the court's finding in this respect.

The defendant is not entitled to any corrections in the finding.

The following facts were found: On March 22, 1965, the defendant was a union representative of International Union of District 50, United Mine Workers of America, Local 14977. This local had entered into a contract with the Robertson Paper Box Company of Montville on behalf of certain employees of the company. The contract covered labor-management relations and was in effect on the day in question. It was the defendant's duty to see to it that the employees obtained their rights under the contract. On the day in question, the defendant arranged with O'Neill, personnel manager of Robertson, to confer with Burdick, a shop steward, in the personnel office. At this meeting the defendant learned that company representatives were in the process of conducting a discussion with certain employees concerning union activities. A preliminary discussion was to be held in an office located in the production area. Without permission, the defendant left the personnel office and proceeded to the production area. Arriving there, he was told that the employees would be represented by Dolzenchuk, the union president. The defendant was then told to leave by Lockwood, a company foreman, and later by O'Neill. The defendant refused to leave, asserting he had a right to be present in the absence of Dolzenchuk. Dolzenchuk was late for work and arrived some twenty minutes later, at which time the defendant left the production area.

The court reached the following conclusions: (1) The contract did not give the defendant the right to remain in the production area. (2) The defendant did not obtain such a right by virtue of § 31-105 (7) of the General Statutes. (3) The defendant did remain in the production area "without right" in violation of § 53-103 of the General Statutes.

The defendant has assigned error in the court's conclusions. On such an assignment, an appellate review is limited to whether the conclusions were illegally or illogically drawn from the subordinate facts as found, or whether the conclusions involved the application of an erroneous rule of law material to the case. *Yale University* v. *Benneson,* 147 Conn. 254, 255. The evidence is not reviewed for the purpose of determining whether the subordinate facts furnish legal support for the conclusions, for the court's conclusions are to be tested by its finding and not by the evidence. *Klahr* v. *Kostopoulos,* 138 Conn. 653, 655. The first conclusion reached by the trial court was that the contract did not give the defendant the right to remain in the production area. The defendant contends otherwise. He unsuccessfully sought to raise this point in his motion to correct the finding but did not pursue it in his assignment of errors. Since, however, it appears to be an essential part of the case, it is hereinafter considered. It is agreed that the pertinent part of the contract relating to this claim is article 14, § 1,[2] which provides for a certain procedure, consisting of progressive steps, in the event of any grievance or dispute between the company and the union. If an adjustment is not resolved under the first step, the matter progresses to the next step until four steps have been exhausted, in which event the matter goes

---

[2] "Art. 14, ADJUSTMENT OR GRIEVANCE  Section 1:  Should any grievance or dispute arise between the Company and the Union or any of the Company's employees included within this Agreement, as to the meaning, application or compliance with the provisions of this Agreement, there shall be no suspension of work on account of such grievance or dispute, but a sincere and earnest effort shall be made to settle such differences in the following manner within the designated time periods not including Saturday, Sunday or a holiday. Step 1:  Between the aggrieved employee, accompanied by his department steward if he so desires, and his foreman.  If they are unable to satisfactorily adjust the matter within 3 days it shall be referred in writing to Step 2 within 3 additional days."

to arbitration. The first step, which the court found to be preliminary in nature, provides for a meeting "[b]etween the aggrieved employee, accompanied by his department steward if he so desires, and his foreman." The court did not err in concluding that the defendant derived no right to remain in the production area under this provision, since there is no finding that he was either a department steward or a foreman.

The defendant also claims that his right to be in the production area was lawful under the provisions of § 31-105 (7) of the General Statutes. The court concluded otherwise. The provision in question provides that it shall be an unfair labor practice for an employer "to refuse to discuss grievances with representatives of employees . . . ." There is no finding, and the defendant makes no claim, that the employer refused to discuss a grievance with the duly designated or selected representative of the employees. See General Statutes § 31-106, defining designated or selected representatives. The defendant gains little under this assignment of error.

The defendant further contends that the trial court was without jurisdiction for the reason that Robertson was engaged in interstate commerce, which appears to be conceded, and that under federal labor laws the federal government has exclusive jurisdiction in these matters. This question does not appear to have been properly raised on the record before us either by assignment of error or claims of law. The issue, however, was argued and briefed by the parties and was considered at some length by the trial court in its memorandum of decision. In support of his contention the defendant cites several cases, such as *San Diego Building Trades Council* v. *Garmon,* 359 U.S. 236, *Sullivan* v.

*Day Publishing Co.,* 239 F. Sup. 677, and *Linn* v. *United Plant Guard Workers of America, Local 114,* 337 F.2d 68. An examination of these cases reveals that they relate to civil matters concerning labor relations, such as the awarding of damages against a union engaged in peaceful picketing *(Garmon),* an action against a union for slander and libel *(Sullivan),* and a libel action against a union *(Linn).* The statute which the defendant was found to have violated was criminal in nature and not directed toward or concerned with the governance of industrial relations. While it is true that Robertson, being engaged in interstate commerce, came under the provisions of the Labor-Management Relations Act, 1947 (61 Stat. 136, 29 U.S.C. §§ 141–187), it does not follow that the act deprives a state court of jurisdiction in enforcing its criminal laws or police powers unless in so doing it conflicts with some regulation of the act of either a prohibitive or a protective nature. The United States Supreme Court said in *Allen–Bradley Local* v. *Wisconsin Employment Relations Board,* 315 U.S. 740, 749: "Furthermore, this Court has long insisted that an 'intention of Congress to exclude States from exerting their police power must be clearly manifested.'" Furthermore, there are two necessary conditions to bar state court jurisdiction: (a) an unfair labor practice under the federal act is involved; and (b) interstate commerce within the definition of the federal act is affected. *Devine Bros., Inc.* v. *International Brotherhood of Teamsters,* 21 Conn. Sup. 252, 255. It has not been shown that any employee was deprived of rights protected or granted by the federal act or that the status of any employee under the federal act was impaired or undermined. On the facts presented, we conclude that the nature of the proceedings under review was not in conflict with any regulation or hostile to the policy of the

federal act and that no unfair labor practice was involved. We have been unable to find any authority either in the cases cited by the defendant or in other cases examined by us which as a matter of law requires a contrary conclusion. The trial court committed no error in taking jurisdiction. For a discussion of federal versus state jurisdiction in labor relations cases, see cases cited in CCH Lab. L. Rep. ¶ 5505.

Finally, the defendant contends that the trial court erred in concluding that upon all the evidence he was guilty beyond a reasonable doubt. In this respect it should be noted that no such claim appears in his assignment of errors, as is required by our rules. Practice Book §§ 989 (6), 990, & Form No. 819 (B) (8).

Specifically, the defendant contends that the words "without right" appearing in § 53-103 of the General Statutes must be equated with knowledge that the defendant intentionally committed the act the commission of which resulted in a violation of the law. In this respect he argues that if he believed he had a lawful right to be where he was such belief negates guilt, that is, an honest mistake of law excuses him from the consequences of his act. It is not claimed that the defendant did not intentionally commit the act. He was requested to leave, and he chose to remain on the ground that he had the lawful right to do so. We first consider the question of the defendant's belief that his act was not of an unlawful nature. "It is a rule which is deep in our law, that ignorance of the law or mistake as to its meaning is no excuse and is not ordinarily a defense to a criminal prosecution." 22 C.J.S. 183, Criminal Law, § 48. This rule applies whether the offense is malum prohibitum or malum in se. *Blumenthal* v. *United States,* 88 F.2d 522. "If a man intentionally adopts certain conduct

in certain circumstances known to him, and that conduct is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent." *Ellis* v. *United States,* 206 U.S. 246, 257; *People* v. *Cohn,* 358 Ill. 326; *Hunter* v. *State,* 158 Tenn. 63; 21 Am. Jur. 2d, Criminal Law, § 93. The defendant also contends that the state failed to prove a specific intent to commit the crime. Whether proof of scienter is essential, as claimed by the defendant, is a matter of legislative intent. *State* v. *Sul,* 146 Conn. 78, 86. In *State* v. *Turner,* 60 Conn. 222, the defendant was charged with violating § 1454 of the Revision of 1888 in that he entered upon land of another without permission for the purpose of fishing. On appeal, he contended that he had no criminal intent to violate the law and that without such an intent he could not be found guilty. The court construed the statute (p. 229) as imposing a penalty when the thing forbidden was done, no matter how innocently. While the defendant in the instant case is charged under a different statute, we think the analogy as it relates to intent is the same. The difference between the two statutes arises from the words "without right" which appear in the statute under review (§ 53-103). While under the provisions of § 1454 (as amended, § 53-108) permission to go upon the property of another could only be derived through the owner, the legislature in § 53-103 extended such permission to include any right of entry, whether derived from the owner or otherwise. But if such a right is not shown, the prohibition has been transgressed, and this is so irrespective of intent. The defendant's assignment of error in respect to the foregoing contentions is without foundation.

We have examined the entire record and are satisfied that the trial court's conclusions were conclusions which could be reached legally and logically

and that there was adequate evidence to prove the defendant guilty as charged.

There is no error.

In this opinion KOSICKI and JACOBS, Js., concurred.