LOCAL 45, UNITED RUBBER, CORK, LINOLEUM AND PLASTIC WORKERS OF AMERICA, A.F.L.–C.I.O. *v.* UNIROYAL, INC., ET AL.

| SUPERIOR COURT | NEW HAVEN COUNTY | FILE NO. 31760 |
| | AT WATERBURY | |

Memorandum filed July 17, 1967

*Daniel Baker,* of Stamford, for the plaintiff.

*Pullman, Comley, Bradley & Reeves,* of Bridge-port, for the defendants.

GAFFNEY, J. This is an application for an order for an injunction brought by the bargaining unit Local 45 of the United Rubber, Cork, Linoleum and Plastic Workers of America, A.F.L.–C.I.O., against the Uniroyal footwear division of Uniroyal, Inc. The action is the reverse of the usual plea for an injunction brought by a company against the union. The plaintiff, hereinafter referred to as the union, seeks to restrain the defendant, hereinafter called the company, from engaging in productive activities during the pendency of a strike between the union and the company. The basis of the union's claim is an agreement entered into between the union and the company on April 18, 1967, three days before the strike, in anticipation of the strike, in which agreement the company in paragraph 2 agreed that for the duration of the strike no work would be performed by nonbargaining unit employees that is normally performed by bargaining unit employees. In return for this pledge, the union agreed to provide for an orderly shutdown and to provide maintenance for the plant. The parties agreed that a

union inspection team made up of two members of the union negotiating committee could tour the plant, presumably at any time, and that the fact that such a tour was going to be made would not be announced by the company. It further provided that a member of the company's industrial relation team would accompany the union members on these tours to provide effective policing by both contracting parties. A final provision provided that three gates to the company plant would remain open—the central warehouse entrance, the Maple Street gate, and the central office entrance.

On June 22, 1967, the company informed the union that it was going to resume production in the footwear division and start mailing samples for its salesmen to display. Production actually was started on that date, with nonbargaining unit employees doing the work. The application for an injunction followed, the union claiming, under § 31-115 of the General Statutes, an unlawful breach of the agreement of April 18, 1967; substantial and irreparable injury; greater injury to it than to the company; and no adequate remedy at law. The company contends that the court, under §§ 31-112, 31-113, and 31-115 of the General Statutes, lacks jurisdiction to hear the case; that no irreparable injury to the plaintiff has been shown; that far greater injury will be suffered by the company in the event a restraining order is issued; and that the union has an adequate remedy at law, i.e. a suit for damages for breach of contract. The jurisdictional question is raised by the company in its answer to the union's complaint as well as in its briefs and in oral argument at the time of the hearing. Admittedly, the parties are involved in a "labor dispute." Whether or not the circumstances of this labor dispute confer jurisdiction on the court under §§ 31-113 and 31-115 is the key question.

Section 31-113 limits the jurisdiction of the court, denying the court the power to grant any restraining order to prevent persons involved in a "labor dispute" from exercising their legal rights to (1) stop working, (2) to join a labor organization, (3) to pay or withhold strike or unemployment benefits, (4) to help other parties lawfully in court proceedings brought either on behalf of or against these parties, (5) to publicize the dispute, and (6) to assemble peaceably and counsel, advise, and agree with other parties in pursuit of the lawful acts previously enumerated. It is clear that this section restrains the court from proceeding against unions or union members when they are acting within their legal rights. The argument advanced by the company in its original brief to the effect that the granting of an injunction would violate this section, since it would prohibit the parties from remaining in the relationship of employment (nonbargaining employees being employed) and would prevent the company from paying these employees for work done, stretches the clear intent of the statute and gives to it an interpretation never intended. This statute and § 31-115 do not deprive the court of jurisdiction, but they do limit the jurisdiction of the court. The Labor Disputes Act [now General Statutes, c. 562] "employs a rather unusual terminology. It, in terms, denies the court's 'jurisdiction' to issue in labor disputes injunctions which restrain certain acts, and to issue either temporary or permanent injunctions except upon certain specified conditions. ' "Jurisdiction of the subject-matter is the power of the court to hear and determine cases of the general class to which the proceedings in question belong." ' *Case* v. *Bush,* 93 Conn. 550, 552 . . . ; *New Haven Sand Blast Co.* v. [*Dreisbach*], 104 Conn. 322, 329 . . . . The act does not deny to courts the power to hear and determine actions

seeking injunctions in labor disputes but only limits them in the exercise of that power. The essence of the act is not to take away from courts' jurisdiction, in the usual meaning of that word, over actions seeking injunctions in labor disputes but to forbid them to issue injunctions of a certain character or unless certain conditions are found to exist." *E. M. Loew's Enterprises, Inc.* v. *International Alliance,* 127 Conn. 415, 420.

Section 31-115 reads: "No court shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, except after hearing the testimony of witnesses in open court, with opportunity for cross-examination, in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after a finding of facts by the court, to the effect: (a) That unlawful acts have been threatened and will be committed by a person or persons unless such person or persons are restrained therefrom, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act except against the person or persons, association or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof; (b) that substantial and irreparable injury to the complainant or his property will follow; (c) that as to each item of relief granted greater injury would be inflicted upon the complainant by the denial of relief than would be inflicted upon the defendants by the granting of relief; and (d) that the complainant has no adequate remedy at law. . . ." The company claims that the only unlawful acts will be committed by the union, not by the company, and that the union has no power on this basis to enjoin the company. Additionally, it claims that the union will not suffer

irreparable injury, that greater injury would be suffered by the company than the union, and that finally the union has an adequate remedy at law. Considering the first of these conditions, admittedly the union has not alleged in its complaint the commission or threatened commission of unlawful acts of a violent nature. Does the court then have jurisdiction in such a case to enter a restraining order?

Section 31-115, when enacted, was based on the Norris-LaGuardia Act passed by Congress, 47 Stat. 70, 29 U.S.C. §§ 101-115. "Like the rest of chapter . . . [562], the definition [of "labor dispute"] is closely patterned on the Norris-LaGuardia Act. 47 Stat. 73, 29 U.S.C. § 113 (c); see *E. M. Loew's Enterprises, Inc.* v. *International Alliance*, 8 Conn. Sup. 324, 330. Indeed, we have referred to chapter . . . [562] as our 'Little Norris-LaGuardia Act.' *Kenmike Theatre, Inc.* v. *Moving Picture Operators*, 139 Conn. 95, 97 . . . ." *Devine Bros., Inc.* v. *International Brotherhood*, 145 Conn. 77, 80. Section 107 of the Norris-LaGuardia Act has almost the identical four provisions which are in § 31-115. These must be met before a court is granted jurisdiction. A review of decisions based upon the Norris-LaGuardia Act, on which § 31-115 is patterned, wherein the complainant union does not allege threat of unlawful act or unlawful acts, would seem to be determinative of the question whether the allegation of unlawful acts is necessary. A long, impressive, and persuasive line of federal decisions dealing with actions by unions against employers supports the plaintiff's contention that jurisdiction can be taken by the court in the absence of such a claim. These cover the wide field of injunctions against planned change in work rules by the employer, specific performance of collective bargaining agreements to arbitrate, specific performance of a contract to negotiate with the union for

salary rates for new job classification, and to compel arbitration, and a claimed violation by employer of collective bargaining agreement. *Brotherhood of Locomotive Engineers* v. *Baltimore & Ohio R. Co.,* 310 F.2d 513, 517; *Metal Polishers Local 44* v. *Viking Equipment Co.,* 278 F.2d 142; *Independent Petroleum Workers* v. *Esso Standard Oil Co.,* 235 F.2d 401, 403-5; *Mountain States Division No. 17* v. *Mountain States Telephone & Telegraph Co.,* 81 F. Sup. 397, 400-402; see *Textile Workers Union* v. *Lincoln Mills,* 353 U.S. 448, 457-59; *Local 207, United Electrical Workers* v. *Landers, Frary & Clark,* 34 L.R.R.M. 2242.

Thus, under the Norris-LaGuardia Act, the federal courts have not hewed to the literal interpretation of this section of the act which as a prerequisite to jurisdiction demands a claim of unlawful acts or a threat thereof. The unions have been granted a remedy to bring process seeking equitable relief against employers for breach of bargaining agreements. The case before this court is a case of this nature. Our own Supreme Court recently accorded such jurisdiction to the court in the absence of a claim in the petition of unlawful acts or threats thereof. *Lavery's Main Street Grill, Inc.* v. *Hotel Employees Union,* 146 Conn. 93. In that case, peaceful picketing was restrained. The court took jurisdiction in that case, and relief was granted on an equitable basis alone.

Turning to the question of irreparable injury to the complainant, our Supreme Court determined long ago that whether damages are "irreparable" or not depends more upon the nature of the right which is injuriously affected than upon the pecuniary measure of loss suffered. *Robertson* v. *Lewie,* 77 Conn. 345, 346. The inability of the plaintiff to enforce the provisions of its own contract would

necessarily lead to complete disillusionment with its leadership by the rank and file members and would indeed, in the opinion of the court, sound the death knell of its effectiveness. Its leadership would be discredited; control over its membership would disappear. The probability of ensuing violence is ever present. The damage unquestionably would be "irreparable," and it is so found.

The third question concerns the comparative damage to be suffered by the union and the company. The testimony of the company was that it would lose money through its failure to exhibit its new samples to the trade. Compare this with a destroyed bargaining unit which has enjoyed the trust and confidence of its members over a great many years. Not to be overlooked is the welfare of the 3500 members of the unit, on strike for over eleven weeks, undergoing economic hardships and deprivations, and being faced with the potential loss of their security. Whether the welfare of these people would be jeopardized to a greater extent by the union's shortsighted vision in not allowing samples to be made, thereby assuring them work at the conclusion of the strike, is not the issue before the court. The immediate question is the body blow dealt the union should production be resumed now. The scales weigh heavily in favor of the union in resolving this question.

Finally, the court is faced with the question whether the union has an adequate remedy at law. The suggestion in the company's brief that a suit for money damages provides the union with an adequate remedy at law is untenable. The court finds that recovery of money damages, to wit, the loss of wages suffered by union members as a result of the increased production of samples by supervisory help, is unrealistic and wholly inadequate

to meet the circumstances in this case. The union has no adequate remedy at law.

The court concludes that it has jurisdiction to determine the issues before it.

### FINDING OF FACTS AND ORDER

(1) Plaintiff represents as collective bargaining agent all production and maintenance employees at the Naugatuck plant of the footwear division of Uniroyal, Inc.

(2) Defendant is a corporation organized and existing under the laws of the state of Delaware, duly qualified to do business in the state of Connecticut. One of the plants of its footwear division is located in Naugatuck, Connecticut, where it carries on the manufacture of rubber footwear and other rubber products. Said footwear division, in its Naugatuck operation, normally employs about 4550 employees, most of whom are members of plaintiff.

(3) Prior to the date hereof, the plaintiff and the defendant were parties to a collective bargaining agreement which expired on or about April 21, 1967.

(4) A labor dispute arose between the plaintiff and the defendant. A strike vote was taken, and the defendant was notified that as of 12:01 a.m. on April 21 a strike would begin.

(5) This court has jurisdiction to hear this application.

(6) In anticipation of the strike, the plaintiff and the defendant, through authorized representatives, on April 18, entered into an agreement entitled "Agreement for Orderly Shutdown and

Maintenance of the Naugatuck Footwear Plant." This agreement, plaintiff's exhibit B, is made a part of this finding and is appended hereto.

(7) Pursuant to paragraph 1 of the agreement, the plaintiff provided for about 185 of its members to stay on the defendant's premises after the strike deadline to assist in an orderly shutdown of the plant. These union members worked from two to eight hours beyond 12:01 a.m., April 21, the strike deadline, under direction of management supervisors who specified the necessary work to be done in each of the defendant's departments. The nature of the work required to be done by the defendant is set out in plaintiff's exhibit C, which is made a part of this finding. Additionally, in compliance with paragraph 1 of plaintiff's exhibit B, the plaintiff has furnished and continues to furnish about eight union members a day to maintain steam for the plant, to service the electrical department, the pipe shop, and the cement house, to watch the engineers, and to do other work of a like nature, including providing watchmen for the plant.

(8) On or about May 3 and 4, 1967, the plaintiff engaged in mass picketing at the three gates specified in paragraph 5 of the agreement and prevented ingress to and egress from the plant through these gates.

(9) As a result of the mass picketing, a great many acts of violence occurred on the picket line, and the Naugatuck police were forced to make seventy-four arrests on these two days.

(10) The defendant applied to this court on May 5 for an order to show cause why the plaintiff should not be restrained from illegal picketing.

(11) All parties were present in court on May 9, at which time the court admonished the union

not to engage in illegal picketing or engage in any acts of violence, stating that it would proceed with the hearing unless the plaintiff agreed to stop the illegal picketing and allow ingress to and egress from the defendant's plant for shipment of its products.

(12)  From the date of the original application, made to the court on May 5, with one or two minor exceptions, there has been no disturbance of any kind at the factory gates, the picketing has been legal, and amicable relations between the parties have been resumed.

(13)  The defendant is engaged in the very competitive field of making footwear, and from April or May of each year until the end of July makes samples for its salesmen to use to solicit accounts for delivery starting in December of the same year and ending in March or April of the following year.

(14)  Fabric shoes are made at two other company plants, one in Rhode Island and one in Georgia.  Work is being carried on at these two plants, and fabric shoes are being made in each of the plants.

(15)  Sometime during the week of May 8, 1967, the defendant advised the plaintiff that it needed to get these samples out and that it intended to start production on samples.  The work of producing these samples was to be done by supervisional help.

(16)  Supervisory personnel and supervisory help are people who do not belong to the union.

(17)  A conference was held on May 15 at the factory manager's office.  The officers of the union were present as well as Mr. Smith, who was and is the factory manager; the labor relations supervi-

sor of the company; and several other company representatives.

(18) Smith sought approval of the union to proceed to manufacture the samples. He was refused by the union, the president of the union stating that the union had gone along with the provisions of exhibit B and that it expected the company to do so also.

(19) Smith stated at the time that he felt that the agreement had been abrogated by the union when it violated paragraph 5 of it in not allowing entrance to and exit from the company's gates, and that the agreement was no longer in force and effect.

(20) After a telephone call to New York made by Smith, he returned to the conference and said that the company would honor the agreement.

(21) Since that time both parties have abided by the terms of the agreement. There have been no incidents of mass picketing blocking entrance to any of the company's gates. The union has with regularity sent its inspection teams through the factory. The company has accompanied these members of the union negotiating committee with a member of its industrial relations department.

(22) No official written notice has ever been sent by the company to the union to the effect that the company considered the agreement void.

(23) No further mention of the fact that the company felt that the union had abrogated the agreement was ever made until a hearing was had on this application.

(24) The agreement is in full force and effect.

(25) On June 21 the labor relations supervisor notified the union that the company was going to

start production of samples as well as start up two units in the slush cast department.

(26) Four to five hundred samples a day were to be made with supervisory help until a total of about 40,000 were made.

(27) Production was started the following morning, June 22, and continued on throughout the day.

(28) This production is in violation of paragraph 2 of plaintiff's exhibit B.

(29) This application was then sought by the plaintiff to enjoin the production.

(30) If the company is not restrained from violating paragraph 2 of the agreement, the union will suffer irreparable damage in that all confidence in it will be lost, its effectiveness as a bargaining unit will be destroyed, and control over its members will be lost, as well as any hope of restraining its members from acts of violence.

(31) The plaintiff would suffer far more than the defendant if the restraining order is not granted. The defendant would suffer the loss of revenue. The plaintiff not only would lose the confidence of its members but would be unable to restrain its members from acts of violence, all to the detriment of the plaintiff. Additionally, it would lose members.

(32) The plaintiff has no adequate remedy at law.

(33) The application for a restraining order to stop the defendant from going into production in violation of paragraph 2 of exhibit B is granted.

## ORDER

It is hereby ordered that the defendant be restrained from performing any work, with the help

of nonbargaining unit employees, normally performed by bargaining unit personnel for the duration of the strike, with the exception that whatever work or activities carried on by the company at its plant before June 21, 1967, may be continued. The plaintiff herein, before this restraining order shall issue, will file with the court an undertaking with satisfactory surety in the sum of $5000 to answer all damages in case the plaintiff shall fail to prosecute said action to effect.