LOCAL 818 OF COUNCIL 4 AFSCME, AFL-CIO, ET AL.
*v.* TOWN OF EAST HAVEN ET AL.*

| SUPERIOR COURT | JUDICIAL DISTRICT OF NEW HAVEN | FILE NO. 325979 |
|---|---|---|

* The plaintiffs withdrew their action against the defendants on May 20, 1992.

Memorandum filed January 3, 1992

*Gagne & Collins,* for the plaintiffs.

*Bruce A. Morrison, Michael O. Sheehan,* and *Albis & Pellegrino,* for the defendants.

HODGSON, J. The plaintiffs, local 818 of council 4 AFSCME, AFL-CIO (union), Magdalen Sparaco, Joan Anderson, Lester Ponak, Michael Milici and Regiano Marini, have filed an application for a preliminary injunction to restrain the defendants from giving effect to notices terminating the employment of the individual plaintiffs pending resolution of certain complaints to the state labor relations board and the state board of mediation and arbitration. The defendants claim that their actions are authorized by the charter of the town of East Haven and that injunctive relief is unwarranted. The defendants are the town of East Haven and Henry Luzzi, who was elected mayor of East Haven in November, 1991.

The plaintiffs claim that the defendants have advised the individual plaintiffs, all members of the bargaining unit represented by the plaintiff union, that their employment is to be terminated, and that such notice of termination constitutes a violation of (1) the collective bargaining agreement between the parties, (2) the due process clause of the constitution of the United States as construed by the United States Supreme Court in *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), and (3) the Connecticut Municipal Employee Relations Act, General Statutes § 7-468 et seq. The plaintiffs

claim that the defendants' action so flagrantly flouts the town's obligations under the above provisions that injunctive relief is necessary to prevent serious harm to the credibility and efficacy of the union, which came into existence in large part to obtain job security for its members.

The court finds the following facts. On November 5, 1991, Luzzi was elected mayor of East Haven, defeating incumbent Robert Norman, who was initially elected in 1985. Upon his election, Norman had terminated the employment of certain town employees and replaced them with his choices, including the five individual plaintiffs.

In large part because they hoped to avoid suffering the same fate as a result of future elections, certain town employees, including the individual plaintiffs, formed a collective bargaining unit that was certified as their representative by the state board of labor relations on June 16, 1986. This bargaining unit has negotiated a collective bargaining agreement (contract) with the town on one or more occasions. The contract now in effect provides at article X, § 1 that: "No employee shall be discharged or otherwise disciplined without just cause."

The individual plaintiffs are employed in the following positions, which are identified in the collective bargaining agreement as bargaining unit positions: Sparaco, executive secretary to the mayor; Anderson, welfare director; Ponak, dog warden; Milici, assessor; Marini, elderly services coordinator.

Certification of the bargaining unit and the inclusion of the above positions in the bargaining unit was the result of an agreement by the union and the town in 1986 and was not the subject of adjudication pursuant to General Statutes § 7-471.

With the exception of Milici, who was hired on March 14, 1990, each of the individual plaintiffs has been employed by the town for more than five years.

Each of the individual plaintiffs received a letter from Luzzi, signed as "Mayor-Elect," stating that his or her appointment "will terminate on December 14, 1991, the date Mayor Robert Norman's term of office ends" and advising each recipient that Luzzi did not intend to reappoint them and that "[t]herefore, your last day of work for the Town will be Friday, December 13, 1991." The notifications contained no other reason for discharge.

On December 13, 1991, the union filed a complaint of unfair labor practices against the town, pursuant to General Statutes § 7-470 (a) (4), alleging, in essence, that the town had notified the employees of their termination in violation of article X, § 1, of the contract and that the town had unilaterally acted with regard to a bargainable issue by seeking to impose a condition for termination other than "just cause" without negotiating with the union. The state board of labor relations (board) has scheduled a hearing for January 10, 1992. By operation of General Statutes § 7-471 (4) (E), the board cannot issue a cease and desist order against the town until thirty days after the filing of the union's complaint; that is, January 13, 1992. The town has continued to employ the individual plaintiffs after the announced termination date of December 13, 1991, pending resolution of the application for temporary injunctive relief.

The defendants claim that injunctive relief requiring the continued employment of the individual plaintiffs pending the board's consideration of a request for a cease and desist order is barred by General Statutes § 31-113, which states, in part, that no court shall have jurisdiction to issue any temporary injunction in any

case growing out of any labor dispute prohibiting any person from ceasing or refusing "to remain in any relation of employment."

There is a paucity of Connecticut interpretations of this provision, and the court will therefore resort to federal analysis of the counterpart provision of the Norris-LaGuardia Act, 29 U.S.C. § 104. The United States Supreme Court has indicated that the strictures of 29 U.S.C. § 104 were designed to remedy the "growing tendency of federal courts to enjoin strikes." *Jacksonville Bulk Terminals, Inc.* v. *International Longshoremen's Assn.*, 457 U.S. 702, 708, 102 S. Ct. 2673, 73 L. Ed. 2d 327 (1982); see also *Boys Markets Inc.* v. *Retail Clerks Union*, 398 U.S. 235, 251, 90 S. Ct. 1583, 26 L. Ed. 2d 199 (1970). The cited prohibition has been held not to bar an order requiring an employer to reinstate an employee discharged in violation of a collective bargaining agreement. *Local 2750, Lumber & Sawmill Workers Union, AFL-CIO* v. *Cole*, 663 F.2d 983, 984–87 (9th Cir. 1981). In *De Arroyo* v. *Sindicato de Trabajadoes Packinghouse, AFL-CIO*, 425 F.2d 281, 291 (1st Cir. 1970), the United States Court of Appeals for the First Circuit pointed out that the legislative history of the cited section of the Norris-LaGuardia Act indicates an intent to protect employees in their freedom to choose whether and for whom to labor, not to protect employers from curative remedies.

The Connecticut Supreme Court has stated that because Connecticut's statutes regarding labor relations are similar to the federal statutes, federal interpretations are deemed "particularly pertinent" in construing the Connecticut analog. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.*, 190 Conn. 371, 392 n.12, 461 A.2d 422 (1983); *United Aircraft Corporation* v. *International Assn. of Machinists*,

161 Conn. 79, 85, 285 A.2d 330 (1971), cert. denied, 404 U.S. 1016, 92 S. Ct. 675, 30 L. Ed. 2d 663 (1972).

For the reasons indicated in the federal precedents already identified, this court finds that the provision of § 31-113 relied upon by the defendants does not bar injunctive relief in the situation presented.

While the plaintiffs initially argued that the standard for preliminary injunctive relief applicable to this dispute is the common law equitable standard of *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 196 Conn. 451, 457, 493 A.2d 229 (1985), and *Olcott* v. *Pendleton,* 128 Conn. 292, 295, 22 A.2d 633 (1941), they have assumed in their posthearing brief that they must instead satisfy the requirements of General Statutes § 31-115.

Section 31-115, Connecticut's analog to 29 U.S.C. § 107, provides that temporary injunctive relief may not be granted except after a finding of facts by the court to the effect that: (1) unlawful acts have been threatened and will be committed absent an order; (2) substantial and irreparable injury to the complainant will follow; (3) the balance of harm tips in favor of the complainant; (4) the complainant has no adequate remedy at law; and (5) public officers charged with the duty to protect the complainant's property are unable or unwilling to furnish adequate protection.

The plaintiffs concede that a violation of the collective bargaining agreement based on a good faith disagreement as to interpretation does not constitute an "unlawful act" within the meaning of § 31-115 but claim that the town's conduct amounts to a repudiation of the contract and a prohibited labor practice in violation of § 7-470 (a) (4). That statute prohibits municipal employers from refusing to bargain collectively in good faith with the designated bargaining representative of "an appropriate bargaining unit."

As has been previously mentioned, the plaintiff union became the designated representative of a unit that the town agreed constituted an "appropriate unit" including the listed positions now at issue. The town is now acting as if the five positions held by the plaintiffs are *not* subject to the provisions of the collective bargaining agreement that the town negotiated with the union, and has repudiated the contract by threatening to implement unilaterally its position that the five positions are subject to discharge, without the need to establish just cause as provided in article X, § 1, of the contract with the union, because of the expiration of the former mayor's term of office. The union complains that the town accepted in negotiations one standard for discharge—just cause—but is repudiating that agreement by imposing a different standard—expiration of term of appointment—on several positions never reserved for different treatment in the contract.

Circumstances for terminating employment have been held to be a bargainable "condition of employment" subject to the duty to negotiate; *Fibreboard Paper Products Corporation* v. *National Labor Relations Board*, 379 U.S. 203, 222, 85 S. Ct. 398, 13 L. Ed. 2d 233 (1964) (Stewart, J., concurring); *Board of Police Commissioners* v. *White*, 171 Conn. 553, 559–60, 370 A.2d 1070 (1976); and the town recognized it as such by including article X, § 1, in the current contract.

Commission of an unfair labor practice prohibited by statute constitutes an "unlawful act" within the meaning of § 31-115. The Connecticut Supreme Court has ruled that where a party pursues a course of action for an unlawful purpose, the action is an "unlawful act" within the terms of the statute. *Lavery's Main St. Grill, Inc.* v. *Hotel Employees' Union*, 146 Conn. 93, 98, 147 A.2d 902 (1959). This court finds that the town is in the position of repudiating article X, § 1, of the contract with the union in deference to the new mayor's wish

to make more appointments of his own. Where a bargaining unit has been established and particular positions have expressly been included in that bargaining unit, an attempt unilaterally to eliminate from some positions the full protection of the contract applicable to that bargaining unit is violative of the basic principles of collective bargaining. The town argues that it notified the union president of the terminations. This notification, however, was not a proposal to negotiate but mere advice of a fait accompli, a completed unilateral decision to terminate several members of the bargaining unit without establishing just cause against the unit members involved. A unilateral change in the terms and conditions of employment, even to reflect a provision of local law, is an unfair labor practice if it is imposed without negotiation with the bargaining representative. *New Haven* v. *Board of Labor Relations,* 36 Conn. Sup. 18, 410 A.2d 140 (1979).

Contract repudiation followed by unilateral action has been held to violate General Statutes § 7-470 (a) (4) in *Stamford* v. *Local 465 of Council 4 AFSCME, AFL-CIO,* State Board of Labor Relations, Case No. MPP-4997 (October 10, 1979).

The court finds that the defendants gave notice of imposition of a unilateral change in terms and conditions of employment without negotiating with the union, violating § 7-470 (a) (4) and, therefore, have threatened an "unlawful act" within the meaning of § 31-115.

The defendants claim that their unilateral action will not be held to be a prohibited practice by the labor board because the mayor is authorized by § 3 of chapter V of the town charter to "appoint all department heads and other officers subject to the provisions of Chapter VIII [the civil service provision], and employees of the Town, except as otherwise specifically provided by [the]

Charter." Section 3 of chapter V of the charter states further that the terms of all mayoral appointees shall terminate on the same date as the term of the mayor, except that "such appointees may continue to serve until their successors are appointed and qualified."

The charter provisions indicated that mayoral appointees may be discharged by reason of expiration of the mayor's term, yet the contract provides, contradictorily, that no employee shall be discharged without just cause. Though the defendants attempt to make a distinction between "discharge" and "termination," the outcome—loss of position—is the same, and the contract recognizes only one standard, that of just cause, and not the additional standard of expiration of the mayor's term as now urged by the defendants. If the town had meant to preserve the mayor's option of discharging employees at the expiration of a term, it could have preserved that right in the contract. Instead, the town apparently bargained away this right, leaving new mayors with the option of discharging only those appointees as to whom just cause for discharge exists.

Here, as in *New Haven* v. *Board of Labor Relations,* supra, the board is highly likely to find a municipality's attempt to enforce a city ordinance to constitute an unfair labor practice because of the failure to negotiate the change with the designated bargaining representative of the employees affected.

The provisions of the contract, with respect to discharge of mayoral appointees, are in conflict with the provisions of the charter cited. Where such a conflict exists, General Statutes § 7-474 (f) provides that the terms of the collective bargaining agreement "shall prevail." The town points out that such precedence applies only to contracts approved in accordance with General Statutes §§ 7-467 through 7-477. The town did not present any evidence from which the court could con-

clude that the contract was not duly approved, and the public officers who executed it are presumed to have acted legally and properly. *Cahill* v. *Board of Education,* 198 Conn. 229, 242, 502 A.2d 410 (1985).

The provisions of article X, § 1, are clear and definite and contain no exceptions or distinctions based on expiration of a term. The defendants presented no evidence of any bargaining history or past practice to support their position that article X, § 1, was not meant to apply in all instances and to all employees in the bargaining unit, those appointed by the mayor as well as others. The broad phrase "no employee" that begins the contested contract provision negates a construction that would be different and limited as to those employees appointed by the mayor. The creation of such a distinction must be the subject of negotiation with the bargaining representative.

The defendants contend that if § 7-474 operates to override the provisions of the town charter, it violates article tenth, § 1, of the constitution of Connecticut, which requires delegation by the General Assembly to municipalities of "such legislative authority as from time to time it deems appropriate . . . ." The constitutionality of the binding arbitration provisions of § 7-473 was upheld in *Carofano* v. *Bridgeport,* 196 Conn. 623, 495 A.2d 1011 (1985), and at any rate, the defendants' argument seems to rest on the assumption that the text of article X, § 1, of the contract was imposed as a result of binding arbitration. The defendants have not established that this is so, and indeed the origin of article X, § 1, was not proved at the hearing. This section of the contract may, in fact, have been a matter of voluntary negotiation by the town's negotiating team in order to obtain some prized advantage. In such a situation, voluntary conduct by the town, and not the imposition of a statutory rule of prevalence, would have created the loss of operation of the charter provision.

In the absence of a clear factual record, the court will not find that § 7-474 is unconstitutional.

The court finds unpersuasive the defendants' attempts to characterize their actions as justified by the charter and, therefore, not likely to be held a prohibited practice pursuant to § 7-470 (a) (4).

It is well settled that an individual's loss of employment and wages, without more, does not constitute an irreparable injury for the reason that eventual receipt of back pay has been viewed as an adequate remedy at law. See, e.g., *Cahill* v. *Board of Education,* 187 Conn. 94, 98, 444 A.2d 907 (1982); see also *Sampson* v. *Murray,* 415 U.S. 61, 91–92 n.68, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974).

The plaintiffs invoke a different harm that they characterize as irreparable: the harm to the credibility and strength of the union if it is powerless to present a repudiation of a contract provision furnishing job security during the pendency of its request for issuance of a cease and desist order by the board.

The union staff representative, Joseph Lynch, who provides services to the local unions organized by council 4, AFSCME, AFL-CIO, testified without contradiction that achievement of a reasonable measure of job security was one of the prime objectives of local 818 from its inception. Lynch recounted that many of the members of this new local had witnessed the loss of jobs of their predecessors when Norman replaced Mayor Proto. Mayoral terms in East Haven are of only two years duration, and avoidance of sudden termination unrelated to performance was a goal that was at least partly responsible for the creation of local 818 and its members' commitment to pay union dues.

The union is a very young one, having been certified in 1986. It is also very small with approximately thirty

members. Its president, Ralph Mauro, credibly testified that it is likely to suffer a loss of active members and a loss of strength if it is unable to prevent the disaster of loss of employment after successfully bargaining for the job security clause set forth in article X, § 1, of the contract. On the basis of the testimony of the union officials, the court finds that the damage to the credibility and strength of the union would not be repaired by eventual victory in pursuit of the prohibited practice charge, as the dramatic termination of union members would create a lasting impression of union impotence that would not be fully remedied by later relief.

The "irreparability" of an injury depends more upon the nature of the right injuriously affected than the pecuniary measure of the loss. *New London* v. *Perkins,* 87 Conn. 229, 235, 87 A. 724 (1913); *Robertson* v. *Lewie,* 77 Conn. 345, 346, 59 A. 409 (1904). The plaintiff union has an urgent need to preserve its strength and credibility by meaningful prevention of harm to its members from the commission of prohibited practices by the town. While the administrative remedy supplied by § 7-470 (a) (4) may be perfectly sufficient in most instances, the state labor board will not be able to act on the plaintiffs' application for a cease and desist order until mid-January 1992, pursuant to § 7-471 (4) (E). Under all of the circumstances presented here, where the prohibited practice is no less than the repudiation of a crucial contract provision as to five of the union's thirty members, the court finds that the harm to the union would be both substantial and irreparable in the form of an abiding disillusionment with the union that was formed in large part to protect its members from loss of employment upon changes of administration every two years.

The defendants argue that the harm to the union from the denial of injunctive relief is less than the harm

to them if the individual plaintiffs remain in their positions. Luzzi claims that he will be handicapped in enacting his administration's program if he is not able to make his own appointments to the jobs held by the five plaintiffs. A mere perusal of the titles of these jobs makes this claim questionable: dog warden; elderly services coordinator; director of welfare; assessor; executive secretary. The defendants offered no evidence to establish that any of these apparently administrative positions requires the making of policies that would vary from policies directed by the mayor or even that the plaintiffs had displayed any unwillingness to follow directives and to perform well under a new administration.

Since article X, § 1, of the contract provides for discharge for just cause, the defendants are not prevented from terminating the employment of any plaintiffs if indeed they fail to perform adequately in the new administration. The defendants merely surmise that the performance of the plaintiffs may not be adequate. Such surmise does not outweigh the harm to the union, previously discussed, if its members were summarily discharged in repudiation of a hard-won contract and in violation of the town's duty to negotiate.

Under the formulation of § 31-115, the usual equitable consideration of the probability of success on the merits of the application for injunctive relief is probably folded into the court's determination that the defendant is committing an unlawful act, and the analysis previously set forth therefore satisfies this element of entitlement to equitable relief.

The defendants argue that any harm to the union will be repaired by the outcome of its complaint to the state board of labor relations. The difficulty with this argument, which merges with the defendants' argument for exhaustion of administrative remedies, is that the

defendants propose to enact the harm of discharge of unit members now, and the labor board will not, pursuant to § 7-471 (4) (E), be able to consider issuing a cease and desist order until January 13, 1992. The defendants' case citations are not on point. What is at stake here is the ability of the union to preserve a contractual right and the integrity of its status as bargaining agent in the face of an employer's commission of a practice prohibited by state law and in total disregard of the duty to negotiate with the union. While a delay ridden administrative procedure has been held to be adequate where the interim harm was lost wages or a period of dispute over mere contract interpretation; see *Aluminum Workers International* v. *Consolidated Aluminum Corporation,* 696 F.2d 437 (6th Cir. 1982); the adequacy of remedies at law must be viewed in relation to the more elevated injury here, that of suffering an unlawful repudiation of a crucial term of a collective bargaining agreement with a union formed in part to avoid just such job insecurity as the defendants are attempting to impose.

The board's inability even to start considering a cease and desist order until January 13, 1992, leaves the plaintiffs without an adequate remedy until the board can adjudicate their request for such an order.

Here, as in *Local 45* v. *Uniroyal, Inc.,* 27 Conn. Sup. 155, 161–62, 232 A.2d 763 (1967), the legal remedies available are not adequate to provide warranted relief at this time, and injunctive relief is necessary until the labor board fully takes over the dispute and adjudicates the request for a cease and desist order.

Section 31-115 requires that a complainant whose application for a temporary injunction is granted shall file "an undertaking with surety satisfactory to the court granting the injunction, to answer all damages in case the plaintiff in the action in which the injunction is applied for fails to prosecute the action to effect."

The effect of the temporary injunction is to leave in their positions five plaintiffs who are required, as usual, to fulfill the duties of those positions. There is no proposal to eliminate these positions and the effect of the court's order is not to add any expense that the town would not otherwise incur. Since no damages are identified, no bond is ordered beyond the recognizance bond already provided by the plaintiffs.

The terms of the injunctive relief ordered are set forth in a separate order.