**Daniel B.C. GARDINER, Plaintiff,**

**v.**

**TOWN OF FAIRFIELD; Fairfield Board of Fire Commissioners; Joan Rasmussen, Individually and in her capacity as a member of the Board of Fire Commissioners; Michael Dowling, Individually and in his capacity as a member of the Board of Fire Commissioners; George A. Tatangelo, Individually and in his capacity as a member of the Board of Fire Commissioners; Charles Ross, Individually and in his capacity as a member of the Board of Fire Commissioners; and Paul Audley, Individually and as First Selectman of the Town of Fairfield, Defendants.**

No. 3:97–CV–1398 (GLG).

United States District Court,
D. Connecticut.

May 14, 1999.

Burton S. Rosenberg, Town's Attorney's Office, Hamden, CT, for Plaintiff.

Thomas F. Maxwell, Jr., Pullman & Comley, Bridgeport, CT, Richard H. Saxl, Westport, CT, for Defendants.

## MEMORANDUM DECISION

GOETTEL, District Judge.

This case arises from the non-renewal of plaintiff Daniel B.C. Gardiner's contract for his position as Fire Chief for the defendant Town of Fairfield ("Town"). Plaintiff's five-count complaint alleges violations of his rights under the Fourteenth Amendment of the U.S. Constitution and Article One, Section 10 of the Connecticut Constitution (Count One), violation of Section III.F.9. of the Town Charter (Count Two), breach of contract (Count Three), tortious interference with an employment contract (Count Four), and negligence (Count Five). Pursuant to Federal Rule of Civil Procedure 56, defendants have moved for summary judgment. For the following reasons, defendants' motion (doc. # 32) is GRANTED on Count One. Having dismissed the only federal claim, we decline to exercise supplemental jurisdiction over the remaining state-law claims and we dismiss them without prejudice.

## *BACKGROUND*

A court may grant summary judgment only if it determines that there is no genuine issue of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Fed.R.Civ.P. 56(c). When ruling on a summary judgment motion, a court must construe the facts in a light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S.

574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If there is no genuine issue of material fact, the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this case we construe the facts in plaintiff's favor, and to the extent possible we rely on the undisputed facts set forth in the defendants' Local Rule 9(c)1 Statement and plaintiff's affidavit.[1]

Plaintiff began serving as Fire Chief on July 1, 1991 pursuant to a contract between himself and the Town dated June 21, 1991. The contract specifies that plaintiff's term "shall be for 7 years commencing July 1, 1991 and ending June, 30, 1998."[2] Defs.' Mem.Ex. A ¶ 3. It further provides that "[n]ot later than twelve (12) months prior to the expiration of this contract, the Board of Fire Commissioners shall advise the Chief as to whether or not it wishes to enter into a successor contract." *Id.* The contract separately addresses "Termination" in paragraph 4. It states, "[t]he Board of Fire Commissioners may at any time dismiss the Chief pursuant to the provisions of section 7–302 of the Connecticut General Statutes upon such notice as required by Article III, Section F9 of the Charter of the Town of Fairfield." Defs.' Mem.Ex. A ¶ 4(A).

At a meeting on May 1, 1997, the members of the Board of Fire Commissioners ("Board"), including defendants Joan Rasmussen, Michael Dowling, George Tatangelo, and Charles Ross, voted not to enter into a successor contract with plaintiff once his contract expired on June 30, 1998. *See* Rasmussen Aff. of 12/24/98, ¶ 4; Dowling Aff. of 12/22/98, ¶ 4; Tatangelo Aff. of 12/23/98, ¶ 4; Ross Aff. of 12/23/98, ¶ 4. Plaintiff would have this Court characterize the vote at the meeting as one on his dismissal rather than on whether to renew his contract. *See* Gardiner Aff. ¶ 31(a) (stating that "the defendant Board members dismissed me at the Board meeting held on or about May 1, 1997"). Plaintiff's description of what transpired at the meeting, without any supporting evidence, is

---

1. Plaintiff did not submit a Local Rule 9(c)2 Statement, and thus did not state "in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 9(c)1 Statement whether each of the facts asserted by the moving party is admitted or denied." Local Rule 9(c)2. Nor did he list each issue of material fact as to which he contends there is a genuine issue to be tried. Generally, if a party fails to file a Local Rule 9(c)2 Statement, all of the material facts set forth in the moving party's Local Rule 9(c)1 Statement are deemed admitted. Local Rule 9(c)1; *Kusnitz v. Yale Univ. Sch. of Med.,* No. 3:96–cv–2434, 1998 WL 422903, at *1 (D.Conn. July 16, 1998). For our purposes, the plaintiff's failure to provide a Local Rule 9(c)2 Statement is not fatal to his claims because we find that the parties agree on the material facts relating to the. dates of plaintiff's hiring, dismissal, and terms of his employment. Thus, the only issue on plaintiff's federal claim is one of law—whether plaintiff had a liberty or property interest in his continued employment as Fire Chief. Consequently, we find it appropriate to resolve this dispute by summary judgment.

2. Plaintiff asserts that during the discussions concerning his employment contract, the Town "at no time" took "the position that my employment as Chief would be limited to a term of years." Gardiner Aff. ¶ 10. Yet at plaintiff's deposition, the following exchange took place:

    Q.: So, the original proposal was that the Town give you a contract as far as chief for five years?
    A.: That's my recollection.
    Q.: And you negotiated it up to seven years?
    A.: That is correct.

    Gardiner Dep. at 129. Plaintiff further testified that he understood "quite well" the paragraph of his employment contract relating to the term of his employment. *Id.* at 131. Based on the contract's plain language and plaintiff's understanding that the parties envisioned plaintiff's term of employment would be seven years, plaintiff cannot now argue that paragraph 3 of the 1991 contract has no effect. *See Gibson v. Capano,* 241 Conn. 725, 730–31, 699 A.2d 68, 71 (1997) (stating that "in private disputes, a court must enforce the contract as drafted by the parties and may not relieve. a contracting party from anticipated or actual difficulties undertaken pursuant to the contract, unless the contract is voidable on grounds such as mistake, fraud or unconscionability") (citations omitted).

not enough to create a genuine issue of material fact. *See Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505 (stating that, where a defendant moves for summary judgment, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff"); *see also Gates v. Sicaras,* 706 F.Supp. 169, 172 (D.Conn. 1989) (finding that a "plaintiff has the burden of proving a legitimate enforceable claim of entitlement to his continued employment") (citation omitted). Indeed, plaintiff does not expressly deny that at the May 1 meeting the Board voted on whether to enter into a successor contract with him. Instead, he insists that as a result of the vote he was "dismissed" (even if the dismissal was effective over a year later) perhaps in an attempt to bring this case under paragraph 4 of the contract, thereby triggering the notice and hearing provisions of section 7–302. In contrast, defendants submitted a letter dated May 3, 1997 written by defendant Paul Audley, the Town's First Selectman, to plaintiff which states as follows:

> As you know, the Fire Commission provided notice as required in your contract that they do not intend to enter into a successor contract at the expiration of this agreement (June 30, 1998). The contract does not require any further action, nor does it allow for an appeal process. The decision of the commission is final.

Defs.' Mem.Ex. B. Plaintiff has not contested the authenticity of this letter. Accordingly, we find that there is no genuine issue of material fact relating to the vote which occurred on May 1 relating to the renewal of plaintiff's employment contract.

Based on the outcome of that vote, plaintiff brought this action on July 16, 1997 against the Town, the members of the Board of Fire Commissioners in their individual and official capacities, and the First Selectman in his individual and official capacities.

## DISCUSSION

■ In Count One, plaintiff claims that defendants violated his procedural due process rights under the Fourteenth Amendment of the U.S. Constitution and Article One, Section 10 of the Connecticut Constitution by failing to give him a statement of reasons for his dismissal and refusing to provide him with a hearing or opportunity to be heard. As discussed by the Supreme Court in *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the threshold issue in a procedural due process case under the Fourteenth Amendment is whether the plaintiff has a protectable property or liberty interest.

"Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. In this case, while plaintiff was employed as Fire Chief under the terms of the 1991 contract, his property interest in his position as Fire Chief stemmed from two sources—his employment contract and Conn. Gen.Stat. § 7–302. In *Roth,* the Supreme Court found that a public employee's property interest in employment could be created and defined by the terms of his appointment. 408 U.S. at 578, 92 S.Ct. 2701.[3] Additionally, section 7–302 provides that:

> No active head of any fire department of any town ... shall be dismissed unless he has been given notice in writing of the specific grounds for such dismissal and an opportunity to be heard in his own defense, personally or by counsel, at a

**3.** The Supreme Court noted that the notice of appointment at issue in that case was the equivalent of an employment contract. 408 U.S. at 566 n. 1, 92 S.Ct. 2701.

public hearing before the authority having the power of dismissal.

Thus, while plaintiff was actively serving as Fire Chief he had a legitimate claim of entitlement to his employment because he could not be dismissed without receiving written notice of the grounds for the dismissal or being given an opportunity to be heard. *See Clisham v. Board of Police Comm'rs of Borough of Naugatuck*, 223 Conn. 354, 360, 613 A.2d 254, 258 (1992) (finding that a police chief who, pursuant to Connecticut law, could be removed from office only for "malfeasance or for any neglect or .refusal to properly perform his duties" has a property interest in his position that is protected by the Due Process clause).

Nevertheless, plaintiff's procedural due process claim requires the existence of a property interest in *continued* public employment. According to the plain language of plaintiff's employment contract, plaintiff's term as Fire Chief ran for seven years beginning July 1, 1991 and ending June 30, 1998. Defs.' Mem.Ex. A ¶ 3. As in *Roth*, plaintiff's property interest in his employment arose from his employment contract. "Those terms secured his interest in employment up to June 30, [1998]. But the important fact in this case is that they specifically provided that the [plaintiff's] employment was to terminate on June 30." 408 U.S. at 578, 92 S.Ct. 2701. In conclusion, the Supreme Court held that the "terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment." *Id.* For similar reasons, we find that once the Board acted under paragraph 3 and advised plaintiff that it did not wish to enter into a successor contract with him, plaintiff no longer had an entitlement to continued employment past June 30, 1998.

Plaintiff argues that this case falls under paragraph 4(A) of his employment contract such that "if I was dismissed 'at any time' I would be entitled to the protections afforded by [Conn.Gen. Stat.] Section 7–302." According to him, "[t]his would include a dismissal, which was effective on June 30, 1998, the last day of the term of the Agreement." Gardiner Aff. ¶ 17. In an attempt to fit his case into paragraph 4(A), plaintiff is fighting the plain words of the contract in paragraph 3, which clearly state that the term of the contract would end on June 30, 1998. Yet, a court presented with clear and unambiguous contract language must give the contract effect according to its terms. *Southeastern Conn. Regional Resources Recovery Authority v. Department of Public Utility Control*, 244 Conn. 280, 291, 709 A.2d 549, 555 (1998) (citation omitted). Additionally, we must consider the contract as a whole and give full meaning to every provision in order to reach a reasonable overall result. *United Techs. Corp. v. American Home Assurance Co.*, 989 F.Supp. 128, 144 (D.Conn.1997) (citation omitted); *see Big Y Foods, Inc. v. Connecticut Properties Tri–Town Plaza, LLC*, 985 F.Supp. 232, 235 (D.Conn.1998) ("Every provision of the contract must be given effect if it can reasonably be done, because parties ordinarily do not insert meaningless provisions in their agreements.") (citation and internal quotation marks omitted). Thus, we must read paragraphs 3 and 4 of the 1991 contract together. We do not find that the two paragraphs conflict—paragraph 3 addresses the term of the contract and paragraph 4 governs dismissal. If we read paragraph 4 to cover all situations involving the termination of plaintiff's employment, including non-renewal and dismissal, paragraph 3 would have no purpose. We will not torture the plain language of the contract in such a way.

Additionally, we find that section 7–302 does not give plaintiff a claim of entitlement to continued employment. First, the statutory language refers to "active" heads of local fire departments. Once the Board decided not to enter into a successor contract with plaintiff, and plain-

tiff's contract expired on June 30, 1998, plaintiff was no longer an active fire chief. Second, section 7–302 applies to the *dismissal* of fire department heads. This case does not involve plaintiff's dismissal because by the terms of plaintiff's employment contract, plaintiff's employment expired on June 30, 1998. The Board merely voted not to renew plaintiff's contract; it did not vote to fire plaintiff or relieve him of his official duties. If at any time during plaintiff's employment the Board sought to exercise its rights under paragraph 4(A) of the contract to dismiss plaintiff before his employment terminated, the Board was required to comply with section 7–302. Under these circumstances, the Board would have been required to give plaintiff written notice of the grounds for his dismissal and an opportunity to be heard in his defense. If, however, the Board did not want to enter into a successor contract with plaintiff, such that plaintiff's employment would conclude upon the end of the term of employment set forth in the contract, the Board simply needed to give plaintiff more than twelve-months' notice of its decision.

Plaintiff argues that the situation at issue here is similar to disputes brought by employees who are political appointees of a mayor but who are also covered by employment agreements. Plaintiff contends that in these cases "Connecticut courts have held that a town cannot terminate the employee on the pretext that the term of his office, coterminous with that of the deposed mayor who had appointed him, 'ran out.'" Pl.'s Mem. at 4. As support for his argument, plaintiff cites only one case, *Local 818 v. Town of East Haven*, 42 Conn.Supp. 227, 614 A.2d 1260 (1992), in which town employees sought a preliminary injunction to prevent them from being terminated based on notices they received from the newly-elected, incoming mayor advising them that their employment would end on the last day of the defeated mayor's term of office. Each plaintiff was covered by a collective bargaining agreement which prohibited an employee from being discharged without just cause. Defendants, the town and the newly-elected mayor, argued that their actions were authorized by the town charter which permits incoming mayors to make certain appointments and states that the terms of all mayoral appointees shall "terminate on the same date as the term of the mayor, except that such appointees may continue to serve until their successors are appointed and qualified." 42 Conn.Supp. at 235, 614 A.2d at 1265. To resolve the conflict between the collective bargaining agreement and the Town Charter, the court reasoned that as a party to the collective bargaining agreement, the town could have included a provision allowing an incoming mayor to discharge employees at the end of the defeated mayor's term. The court concluded that "the town apparently bargained away this right, leaving new mayors with the option of discharging only those appointees as to whom just cause for discharge exists." *Id.*, 614 A.2d at 1265. Finally, the court relied on a section of the Connecticut General Statutes providing that in a conflict between a collective bargaining agreement and a town charter, the terms of the contract prevail. Conn.Gen.Stat. § 7–474(f).

The facts of *Local 818* are distinguishable from the instant dispute in several respects. First, *Local 818* did not involve the expiration of a term of employment arising from specific language in an employment contract. Based on the language in the town charter, the employment terms for the mayoral appointees would have continued unless a new mayor appointed a successor. Thus, their employment was not guaranteed to terminate upon the election of a new mayor. Second, in this case there is no conflict between the employment contract and the state statute. As discussed previously, section 7–302 applies only to terminations or dismissals and we have found that neither occurred in this case. Indeed, with respect to terminations and dismissals, the contract provides that the Town must comply with the requirements of section 7–302. The only similari-

ty between this dispute and *Local 818* is that the parties disavowing the contract language are the ones who participated in the contract negotiations. Here, it is plaintiff's contract and not the Town Charter that imposes a cut-off date for plaintiff's term of employment—a contract which plaintiff himself negotiated.

Because we find that plaintiff does not have a property interest in his continued employment as Fire Chief, we grant summary judgment to defendants on their Fourteenth Amendment claim under Count One. *See Zinermon v. Burch,* 494 U.S. 113, 127–28, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (suggesting that a court reaches the issue of what process is due only if it previously found that the plaintiff had a constitutionally protected liberty or property interest). We also grant defendant's motion for summary judgment on Count One relating to plaintiff's claim under Article One, Section 10 of the Connecticut Constitution because the U.S. and Connecticut Constitutions contain the same due process provisions and are given the same effect. *Barde v. Board of Trustees of Regional Community Colleges,* 207 Conn. 59, 64, 539 A.2d 1000, 1003 (1988).

### CONCLUSION

For the foregoing reasons, defendants' motion (doc. # 32) is GRANTED on Count One. Having declined to exercise supplemental jurisdiction over plaintiff's state-law claims, we dismiss Counts Two through Five without prejudice. *See* 28 U.S.C. § 1367(c)(4). The Clerk of the Court is directed to enter judgment in defendant's favor and close the case.

**SO ORDERED.**